**FILED**

**JANUARY 14, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| NORTHERN TRUST CORPORATION,<br>a Delaware Corporation,<br><br>       Plaintiff,<br><br>   v.<br><br>JPMORGAN CHASE & CO.,<br>a Delaware Corporation,<br><br>       Defendant. | Case No. |

**08 C 297**

**JUDGE HART**
**MAGISTRATE JUDGE KEYS**

### COMPLAINT

Plaintiff, Northern Trust Corporation ("Northern Trust"), for its Complaint against

Defendant JPMorgan Chase & Co. ("Chase") states as follows:

### Parties

1.     Northern Trust is a corporation organized and existing under the laws of the State of

Delaware.  Its headquarters and principal place of business is at 50 South LaSalle Street, Chicago,

Illinois 60603.

2.     Chase is a corporation organized and existing under the laws of the State of

Delaware.  Its corporate headquarters are at 270 Park Avenue, New York, New York 10017.  Its

United States consumer and commercial banking headquarters are at 355 E. Illinois Street, Chicago,

Illinois 60611.

### Jurisdiction and Venue

3.     This is an action for trademark infringement and unfair competition under the

Lanham Act, 15 U.S.C. § 1051 *et seq.*, for deceptive trade practices under the Illinois Uniform

Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.* and the Consumer Fraud and Deceptive

Business Practices Act, 815 ILCS 505/1 *et seq*., and for trademark infringement and unfair competition under common law.

4.     This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1338 (a) and (b).  This Court has supplemental jurisdiction over the state and common law claims under 28 U.S.C. § 1367.

5.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b) and (c).

<u>**Facts**</u>

<u>**Northern Trust and Its WHAT REALLY MATTERS Mark**</u>

6.     Northern Trust is an independent private bank.  Northern Trust provides banking and related financial services for corporations, institutions, and affluent individuals and families, including investment management, asset and fund administration services and fiduciary and banking solutions.  Since 1889, Northern Trust has distinguished itself by its commitment to exceptional service, stability, and a strong emphasis on client relationships.  Based in Chicago, Northern Trust has a network of 85 offices in 18 states and a dozen international locations.

7.     Northern Trust's legacy of personalized, high-quality, client-centric service has earned it the confidence of generations of clients.  By developing a deep understanding of its clients' needs, and focusing on service quality, rather than quantity, Northern Trust delivers its solutions-based services in the most user-friendly and time-efficient manner possible.  This dedication to client service allows Northern Trust to liberate its clients from their financial management worries, giving them the time and freedom to pursue their interests.

8.     The geographical reach of Northern Trust's personal financial services business is unrivaled:  no other private bank in the United States has as many offices exclusively focused on the affluent market.  Northern Trust's 85 offices are located within a 45-minute drive of approximately half of the nation's millionaire households.  Each office staffs an experienced

team of asset management, fiduciary, and private banking professionals who reside in the same communities where their clients live and work. Northern Trust's close proximity to its clients is one of the characteristics that makes Northern Trust unique.

9.     Northern Trust's efforts to serve the personal wealth market often are recognized by both clients and industry observers. In 2005, Northern Trust received the "Outstanding Private Bank – The Americas" award from *Private Banking International* magazine. In the same year, 22 percent of the *Forbes 400* most affluent Americans were Northern Trust clients.

10.     In May 2005, Northern Trust decided to develop the service mark WHAT REALLY MATTERS for a broad new advertising campaign.

11.     Northern Trust launched an advertising campaign featuring the WHAT REALLY MATTERS mark (the "WHAT REALLY MATTERS Campaign") in January 2006, with print and television advertisements. Copies of representative advertisements from the WHAT REALLY MATTERS Campaign are attached as **Exhibit 1**.

12.     In 2005, Northern Trust spent more than $8 million to develop the WHAT REALLY MATTERS Campaign.

13.     Northern Trust continued the WHAT REALLY MATTERS Campaign through 2006 and 2007, spending in excess of $9 million and $10 million, respectively. The WHAT REALLY MATTERS Campaign continues in a variety of media.

14.     The WHAT REALLY MATTERS Campaign enhanced Northern Trust's valuable reputation and goodwill among clients as a financial services provider that offers an exceptionally high level of customers service. Northern Trust's clients and potential clients have come to associate the WHAT REALLY MATTERS mark with the outstanding financial services provided by Northern Trust. These services are widely sought by discerning clients due to Northern Trust's excellent reputation.

15.     Northern Trust owns the following valid federal trademark registration for WHAT

REALLY MATTERS marks:

| WHAT REALLY MATTERS | Filed: July 19, 2005<br>Registered: December 25, 2007 | Services: banking services, personal and corporate trust services, funds investment, investment advice, and investment consultation services |
|---|---|---|
| THE FREEDOM TO FOCUS ON WHAT REALLY MATTERS | Filed: July 19, 2005<br>Registered: January 1, 2008 | Services: banking services, personal and corporate trust services, funds investment, investment advice, and investment consultation services |

Copies of these registrations are attached as **Exhibit 2**.  When Northern Trust applied to register

these marks, the Trademark Office found "no similar registered or pending mark which would

bar registration under Trademark Act Section 2(d), 15 U.S.C. Section 1052(d)."  Copies of the

relevant office actions are attached as **Exhibit 3**.

16.     Prior to Chase's actions described below, no live federal trademark registration or

application existed for marks containing the words "what" and "matters" in connection with

banking services other than Northern Trust's marks.  A copy of a search of the Trademark

Office's web site performed on January 13, 2008, reveals exactly three entries for such marks.

The first two are Northern Trust's registrations, and the third is Chase's application.  Had Chase

performed this simple search at any time since July 2005 and prior to adopting the CHASE

WHAT MATTERS MARK, it would have immediately discovered Northern Trust and its

WHAT REALLY MATTERS marks.  A copy of the Trademark Office web site search of

January 13, 2008, is attached as **Exhibit 4**.

## JPMorgan Chase & Co. and Its CHASE WHAT MATTERS Mark

17.     Chase is a leading global financial services firm.  It serves millions of consumers throughout all 50 states, operates in more than 50 countries, and has more than 170,000 employees.  Chase is a component of the Dow Jones Industrial Average, has issued more than 154 million credit cards, and serves the public and small businesses through nearly 3,100 bank branches, 9,100 ATMs, and 280 mortgage offices.  Chase also has loan-originating relationships with 15,000 auto dealerships.

18.     The last fifteen years have seen a surge in merger and acquisition activity in the banking and financial services industry.  Recent examples include Wachovia's acquisitions of SouthTrust, Golden West Financial, and World Savings Bank; as well as Bank of America's acquisitions of FleetBoston Financial Corp., MBNA Corporation, and LaSalle Bank.  Chase has been an active participant in this trend.  In 2004, Chase acquired Bank One Corporation, which had been the sixth-largest bank in the United States.  In 2006, Chase acquired The Bank of New York's consumer, small-business, and middle-market banking businesses.  Most recently, at the same time as its launch of its CHASE WHAT MATTERS advertising campaign, Chase completed an acquisition of part of the mortgage portfolio belonging to British lender **Northern Rock**.

19.     Chase's 2006 Annual Report states that Chase "increased checking accounts 14% to 10 million" as well as "added 438 net new branches, including 339 acquired from The Bank of New York; and 1,194 ATMs, including 400 acquired from The Bank of New York and 500 placed in Walgreens stores."  A copy of p. 15 from Chase's 2006 Annual Report, titled "Retail Financial Services," is attached as **Exhibit 5**.

20.     Chase's 2006 Annual Report also states that Chase was the "#1 commercial bank in market penetration in Chase's retail branch footprint, almost double that of the next leading

competitor." A copy of p. 17 from Chase's 2006 Annual Report, titled "Commercial Banking," is attached as **Exhibit 6**.

21.    On October 19, 2007, Chase filed a federal trademark application with the United States Patent and Trademark Office to register the mark CHASE WHAT MATTERS for banking and related financial services (App. Ser. No. 77/308,911). The application was filed on an intent-to-use basis, well after Northern Trust applied to register its WHAT REALLY MATTERS mark.

22.    In an office action dated December 28, 2007, the Trademark Office refused registration of the CHASE WHAT MATTERS mark based on a likelihood of confusion with Northern Trust's registration of WHAT REALLY MATTERS. The Trademark Office found that Northern Trust's and Chase's marks and services were similar, stating that:

> [Chase]'s mark, CHASE WHAT MATTERS, is similar to the registered mark, WHAT REALLY MATTERS. The marks both contain the words 'WHAT' and 'MATTERS,' which have the same sound, spelling, and meaning in the marks.
> . . .
> [Chase]'s services, namely 'Banking and related financial services,' are similar to registrants' services, namely 'banking services, personal and corporate trust services, funds investment, investment advice, and investment consultation services.'
> . . .
> **Accordingly, registration is refused under § 2(d) of the Trademark Act based upon a likelihood of confusion.**

(Emphasis added, citations omitted.) A copy of the office action is attached as **Exhibit 7**.

23.    Despite the Trademark Office's refusal to register Chase's mark due to a likelihood of confusion with Northern Trust's mark, on January 9, 2008, Chase announced that it planned to debut the CHASE WHAT MATTERS mark as the centerpiece of a national rebranding campaign designed for highest visibility among the entire U.S. public. A copy of the

New York Times article announcing Chase's CHASE WHAT MATTERS campaign is attached as **Exhibit 8**.

24. The New York Times article also states that the CHASE WHAT MATTERS campaign is "the first overhaul of Chase's brand advertising since its 2004 merger with Bank One. The ads . . . will be used throughout the bank's wide range of consumer businesses, including credit cards, student loans and retail banking."

25. Chase announced that the first new CHASE WHAT MATTERS advertisements will air on Monday, January 14, 2008, during the "Today Show" on NBC and on "Good Morning America" on ABC, both starting at 7:00 a.m. EST. Advertisements will appear on ABC, CBS, and NBC nationally, as well as on various cable networks, including the Food Network, HGTV, and The History Channel. Prominent television programming during which CHASE WHAT MATTERS advertisements will be shown include the Super Bowl pre-game show, Oprah Winfrey's pre-Academy Awards interview special, and prime-time programming such as the highly-rated shows "Grey's Anatomy," "American Idol," "Prison Break," and "Boston Legal." A copy of a Business Wire press release issued on January 9, 2008, discussing the CHASE WHAT MATTERS marketing campaign is attached as **Exhibit 9**.

26. The Business Wire press release also states that online CHASE WHAT MATTERS advertising also will begin on January 14, 2008, on high-impact web sites such as <yahoo.com> and <msn.com>. Print advertisements in newspapers and magazines, including the March issue of *O*, Oprah Winfrey's magazine, will begin running on Sunday, January 13, 2008. A copy of the print advertising that appeared in the January 13, 2008, New York Times is attached as **Exhibit 10**. Chase also plans to make extensive use of outdoor and out-of-home advertising media, including subways, public transit stations, billboards, and movie theater trailers.

27.     According to Business Wire, Chase executives say that they will spend more than $70 million on the CHASE WHAT MATTERS advertising campaign in the first quarter of 2008 alone.  The overwhelming size of this campaign will swamp the market, smothering Northern Trust's WHAT REALLY MATTERS Campaign.  In the next two-and-one-half months, Chase plans to spend over twice times as much on promoting its CHASE WHAT MATTERS mark as Northern Trust has spent on its WHAT REALLY MATTERS Campaign since its inception two years ago.

## Northern Trust Shares Its Concerns with Chase

28.     After learning of Chase's planned advertising campaign from media reports on January 9, 2008, Northern Trust promptly contacted Chase to share its concern that the CHASE WHAT MATTERS mark will cause substantial consumer confusion due to its similarity with Northern Trust's WHAT REALLY MATTERS mark.

29.     Representatives of both parties met on January 11, 2008, at Chase's request, but did not reach a resolution.  Chase chose to proceed with its launch of an advertising campaign that features an infringing mark.

30.     Chase, the junior user, is aware of Northern Trust's WHAT REALLY MATTERS mark and Campaign.  Chase plans to use its superior economic power to saturate the financial services market with its confusingly similar CHASE WHAT MATTERS mark, overwhelming the marketplace power and value of the WHAT REALLY MATTERS mark used by Northern Trust, the senior user.  Upon information and belief, Chase knows or recklessly disregards that its use of the CHASE WHAT MATTERS mark will harm Northern Trust's reputation and business.

31.     Chase committed these acts without Northern Trust's permission or consent.

**COUNT I**
**TRADEMARK INFRINGEMENT**

32.     Northern Trust incorporates by reference, as if fully set forth herein, the allegations in paragraphs 1 through 31 of its Complaint.

33.     Chase's use of the CHASE WHAT MATTERS mark as alleged herein is likely to cause confusion as to the source, origin, affiliation, authorization, or sponsorship of Northern Trust's services.  Among other harms, Chase's use of the CHASE WHAT MATTERS mark is likely to cause the consuming public of the United States, including clients or potential clients of Northern Trust, to mistakenly believe that Northern Trust's or its services are legitimately connected or associated with, or sponsored or authorized by, Chase, or that Northern Trust has merged, or is about to merge, with Chase.

34.     Chase's aforesaid use of the CHASE WHAT MATTERS mark violates Northern Trust's exclusive rights in its WHAT REALLY MATTERS mark and constitutes trademark infringement by reverse confusion in violation of the Trademark Laws of the United States, 15 U.S.C. § 1114, and the common laws of various states, including Illinois.

35.     On information and belief, Chase's infringing use of the CHASE WHAT MATTERS mark after the Trademark Office refused registration based on Northern Trust's WHAT REALLY MATTERS registration, and after Northern Trust shared its concern that the CHASE WHAT MATTERS mark infringes the WHAT REALLY MATTERS mark, is and continues to be deliberate, willful, and wanton, making this an exceptional case within the meaning of 15 U.S.C. § 1117.

36.     Chase's aforesaid use of the CHASE WHAT MATTERS mark is greatly and irreparably damaging to Northern Trust and will continue to greatly and irreparably damage

Northern Trust unless enjoined by this Court. An award of monetary damages alone cannot fully compensate Northern Trust for its injuries and Northern Trust lacks an adequate remedy at law.

**COUNT II**
**UNFAIR COMPETITION**

37.    Northern Trust incorporates by reference, as if fully set forth herein, the allegations in paragraphs 1 through 36 of its Complaint.

38.    Chase's use of the CHASE WHAT MATTERS mark as alleged herein constitutes unfair competition, false representation, and false designation of origin upon and in connection with Chase's services, and thus violates 15 U.S.C. § 1125(a) and the common law of various states, including Illinois.

39.    Chase's use of the CHASE WHAT MATTERS mark suggests association or affiliation with Northern Trust, so as to cause, or be likely to cause, confusion or mistake, or to deceive consumers as to the relationship between Chase and its services and Northern Trust and its services. Among other harms, consumers are likely to believe, incorrectly, that Chase and Northern Trust are somehow connected or affiliated or that Chase has added Northern Trust to its stable of mergers.

40.    As a result of the aforesaid acts by Chase, Northern Trust has been severely injured in its business and property. The injury to Northern Trust is and continues to be immediate and irreparable. An award of monetary damages alone cannot fully compensate Northern Trust for its injuries and Northern Trust lacks an adequate remedy at law.

**COUNT III**
**DECEPTIVE TRADE PRACTICES AND CONSUMER FRUAD AND DECEPTIVE**
**BUSINESS PRACTICES IN VIOLATION OF ILLINOIS LAW**

41.    Northern Trust incorporates by reference, as if fully set forth herein, the allegations in paragraphs 1 through 40 of its Complaint.

42.     Chase's use of the CHASE WHAT MATTERS mark as alleged herein causes confusion or misunderstanding on the part of consumers as to the approval, affiliation, connection, or association of Chase's services with Northern Trust's services, or causes consumers to think that Chase has added Northern Trust to its stable of mergers.

43.     As a result of these aforesaid acts, Chase has been and is engaging in deceptive trade practices within the meaning of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.* and the Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*

44.     As a result of the aforesaid acts by Chase, Northern Trust has been severely injured in its business and property.  The injury to Northern Trust is and continues to be immediate and irreparable.   An award of monetary damages alone cannot fully compensate Northern Trust for its injuries, and Northern Trust lacks an adequate remedy at law.

### Prayer For Relief

WHEREFORE, Northern Trust prays that judgment be entered in its  favor and against Chase on Counts I-III of its Complaint as follows:

1.     Chase, its divisions and subsidiaries, and its officers, directors, agents, representatives, attorneys and all persons acting or claiming to act on their behalf or under their direction or authority, and all persons acting in concert or in participation with Chase, be preliminarily and permanently enjoined from:

(a)     making any use of the CHASE WHAT MATTERS mark, the WHAT REALLY MATTERS mark, or any other variant or colorable imitation of the WHAT REALLY MATTERS mark;

(b)     attempting to register the CHASE WHAT MATTERS mark, the WHAT REALLY MATTERS mark, or any other variant or colorable imitation of the WHAT REALLY MATTERS mark;

(c)     registering or making use of any domain name containing the CHASE WHAT MATTERS mark, the WHAT REALLY MATTERS mark, or any other variant or colorable imitation of the WHAT REALLY MATTERS mark; and

(d)     performing any other acts that are likely to lead to reverse confusion or make the public believe that Chase's products are in any manner licensed, sponsored, approved or authorized by Northern Trust, or that Chase has added Northern Trust to its stable of mergers.

2.     That Chase be adjudged to have infringed Northern Trust's rights in and to the WHAT REALLY MATTERS mark, and that Chase be ordered to account for and pay to Northern Trust all profits earned by Chase and damages sustained by Northern Trust, including Northern Trust's damages for loss of goodwill and business reputation, from harm to the distinctive quality of Northern Trust's WHAT REALLY MATTERS mark, for the cost of corrective advertising to dispel the reverse confusion caused by Chase's aforesaid acts, and for Chase's infringement, unfair competition, and deceptive business practices, along with interest.

3.     That Chase be ordered to pay treble the amount of the award and Northern Trust's attorneys' fees pursuant to 15 U.S.C. § 1117.

4.     That Chase be ordered to pay to Northern Trust punitive and exemplary damages in an amount to be determined by this Court for Chase's deliberate and willful infringement of Northern Trust's WHAT REALLY MATTERS mark, unfair competition, and consumer fraud and deceptive business practices pursuant to the Illinois statutes set forth herein.

-12-

5.      That Chase be ordered to file an affidavit with the Court setting forth in detail the manner and form in which it has complied with the terms of the injunction in accordance with 15 U.S.C. § 1116.

6.      That Northern Trust have such other and further relief as this Court may deem just.

## Jury Demand

Northern Trust hereby demands trial by jury for all issues so triable.

Respectfully submitted,

PATTISHALL, McAULIFFE, NEWBURY,
 HILLIARD & GERALDSON LLP

Dated: January 14, 2008          By:  _s/ David Hilliard_____
                                        David C. Hilliard
                                        Uli Widmaier
                                        Teresa D. Tambolas
                                        Ashly A. Iacullo
                                        311 South Wacker Drive, Suite 5000
                                        Chicago, Illinois  60606
                                        (312) 554-8000

                                        *Attorneys for Plaintiff Northern Trust Corporation*