**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| NORTHERN TRUST CORPORATION, a Delaware Corporation, | Case No. 08-CV-0297 |
| Plaintiff, | Judge William T. Hart |
| v. | Magistrate Judge Keys |
| JPMORGAN CHASE & CO., a Delaware Corporation, | |
| Defendant. | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS APPLICATION FOR TEMPORARY**
**RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION**

**I.      INTRODUCTION**

Northern Trust, a private bank headquartered in Chicago, has for two years been running an advertising campaign – the biggest in its history – for its banking and personal financial services under the registered mark WHAT REALLY MATTERS.

On January 13, 2008, JPMorgan Chase, the New York megabank, launched a national advertising blitz for its banking services under the mark CHASE WHAT MATTERS.  This mark is nearly identical to Northern Trust's WHAT REALLY MATTERS mark, and it contains Chase's famous house mark, CHASE.  Chase will spend $70 million in the first two and a half months of the campaign, which will include Super Bowl ads, ads on Oprah Winfrey's pre-Academy Awards interview special, on ABC, CBS, NBC and Fox, on yahoo.com and msn.com, on billboards and more.  CHASE WHAT MATTERS will be as ubiquitous as the Golden Arches.

Chase's nationwide saturation advertising with a near-identical mark, especially one that also includes the famous CHASE house mark, will simply obliterate Northern Trust's mark.

Consumers, including Northern Trust's clients and potential clients, will – incorrectly – associate Northern Trust's advertisements with Chase, or will assume that they are somehow approved by Chase or that there is some association between Northern Trust and Chase. Put another way, Northern Trust will effectively end up running advertisements for Chase, the value and consumer goodwill of Northern Trust's mark will be wiped out, and Northern Trust's efforts to expand into new markets will be with the mark will be completely undermined. As a result, Northern Trust loses control over its corporate identity, goodwill, and reputation.

This constitutes serious and irreparable trademark harm to Northern Trust, known as "reverse confusion," which is expressly recognized in the Seventh Circuit. To prevent this irreparable harm, Chase must be restrained from any use of the CHASE WHAT MATTERS mark. The equities are strongly in Northern Trust's favor: Chase was fully aware of Northern Trust's mark before it launched its campaign. Chase could and should have chosen a non-infringing mark, such as "Chase What's Important" or "Chase The Dream." Instead, Chase decided to imitate Northern Trust's mark, thereby destroying it. This conduct must be stopped.

## II.    STATEMENT OF FACTS

### A.    Northern Trust and its Business

Northern Trust Corporation is a leading provider of banking, investment management, asset servicing, and fiduciary services, primarily for affluent individuals and families, as well as institutions. Affidavit of Ashly A. Iacullo, ¶ 2. Since 1889, Northern Trust has distinguished itself by its commitment to exceptional client service and the importance of building strong, long-lasting relationships. *Id.*

Excellence in client service is a core component of Northern Trust's cultural heritage. *Id.* Northern Trust places a premium on understanding clients and their specific needs. *Id.* Its success in earning the confidence of clients, as evidenced by its growth in assets under custody

and managed assets, demonstrates how Northern Trust's unique array of products and services is receiving increased market acceptance. *Id.* Backed by its comprehensive understanding of clients' needs, Northern Trust is dedicated to delivering solutions-based products in the most user-friendly and time-efficient ways possible. *Id* . Northern Trust's 85 U.S. offices are located within a 45-minute drive of approximately half of the nation's millionaire households. *Id.* Its close proximity to its personal clients is one of the characteristics that makes it unique. *Id.*

### B.    The WHAT REALLY MATTERS Mark

In applications filed with the Trademark Office in July 2005, Northern Trust registered both its WHAT REALLY MATTERS mark and its THE FREEDOM TO FOCUS ON WHAT REALLY MATTERS mark. *Id.* at ¶¶ 3 - 4. Both marks are registered in connection with banking services and related financial services. *Id.* When Northern Trust applied to register these marks, the Trademark Office determined that there was "no similar registered or pending mark which would bar registration under Trademark Act Section 2(d)." *Id.* at ¶¶ 5 - 6.

Indeed, prior to Chase's actions described below, **no live federal trademark registration or application existed for marks containing the words "what" and "matters" in connection with banking services other than Northern Trust's marks**. A search performed on the Trademark Office's web site on January 13, 2008, shows only three entries for such marks. *Id.* at ¶ 7. The first two are Northern Trust's registrations, the third is Chase's current application. *Id.*

| Start | List At: [        ] OR | Jump | to record: [        ] | 3 Records(s) found (This page: 1 ~ 3) |

Refine Search [what[bi] and matters[bi] and banking[gs] and] [Submit]

Current Search:    **S1: what[bi] and matters[bi] and banking[gs] and live[ld]**   docs: 3 occ: 12

|   | Serial Number | Reg. Number | Word Mark | Check Status | Live/Dead |
|---|---------------|-------------|-----------|--------------|-----------|
| 1 | 78673655 | 3363286 | THE FREEDOM TO FOCUS ON WHAT REALLY MATTERS | TARR | LIVE |
| 2 | 78673661 | 3360523 | WHAT REALLY MATTERS | TARR | LIVE |
| 3 | 77308911 |  | CHASE WHAT MATTERS | TARR | LIVE |

Had Chase performed this simple search at any time since July 2005 and prior to adopting the CHASE WHAT MATTERS mark (and, since it is a routine action to take when selecting a new mark, Chase likely did), it would have immediately found out about Northern Trust and its WHAT REALLY MATTERS Marks.

### C.     JPMorgan Chase & Co. and its Business

Chase is the third largest banking institution in the U.S.   *Id.* at ¶ 8.  It serves millions of U.S. customers, operates in more than 50 countries, and has more than 170,000 employees.  *Id.* at ¶ 9.  Chase has issued more than 154 million credit cards, and serves the public and small businesses through nearly 3,100 bank branches, 9,100 ATMs, and 280 mortgage offices.  *Id.* at ¶ 10.  Chase also has loan-originating relationships with 15,000 automobile dealerships.  *Id.*  Chase is a component of the Dow Jones Industrial Average.  *Id.* at ¶ 9.

Chase's 2006 Annual Report states that Chase "increased checking accounts 14% to 10 million" and "added 438 net new branches. . . and 1,194 ATMs, including. . . 500 placed in Walgreens stores."  *Id.* at ¶ 11.  As of 2006, Chase was the "#1 commercial bank in market penetration in Chase's retail footprint, almost double that of the next leading competitor."  *Id.* at ¶ 12.

The last several years have seen a surge in merger and acquisition activity within the banking industry.  Recent examples include Wachovia's acquisitions of SouthTrust, Golden West Financial, and World Savings Bank, Fifth Third Bancorp's acquisition of Old Kent Financial Corp., as well as Bank of America's acquisitions of FleetBoston Financial Corp., MBNA Corporation, and LaSalle Bank.  *Id.* at ¶ 13.  Chase has been an active participant in this trend: in 2004, Chase acquired Bank One Corporation, which had been the sixth-largest bank in the United States.  *Id.*  Chase now occupies Bank One's former headquarters, two blocks from Northern Trust's main offices.  *Id.* at ¶ 20.  In 2006, Chase acquired The Bank of New York's

consumer, small-business, and middle-market banking business.  *Id.* at ¶ 14.  Most recently, at the same time as its launch of its CHASE WHAT MATTERS advertising campaign, the media reported Chase's acquisition of part of a mortgage portfolio belonging to British lender Northern Rock.  *Id.* at ¶ 15.

### D.     The CHASE WHAT MATTERS Mark and Campaign

On October 19, 2007, Chase filed a federal trademark application to register the mark CHASE WHAT MATTERS for banking and related financial services (App. Ser. No. 77/308,911).  *Id.* at ¶ 16.  On December 28, 2007, the Trademark Office refused registration of the CHASE WHAT MATTERS mark based on a likelihood of confusion with Northern Trust's WHAT REALLY MATTERS registration.  *Id.* at ¶ 17.  The Trademark Office found that the parties' marks and services were confusingly similar, reasoning as follows:

> [Chase]'s mark, CHASE WHAT MATTERS, is similar to the registered mark, WHAT REALLY MATTERS.  The marks both contain the words 'WHAT' and 'MATTERS,' which have the same sound, spelling, and meaning in the marks. . .

> [Chase]'s services, namely 'Banking and related financial services,' are similar to registrants' services, namely 'banking services, personal and corporate trust services, funds investment, investment advice, and investment consultation services.' . . .

> **Accordingly, registration is refused under § 2(d) of the Trademark Act based upon a likelihood of confusion**.

(Emphasis added, citations omitted.)  *Id.*

Despite being put expressly on notice by the Trademark Office about Northern Trust's mark and likelihood of confusion, Chase announced on January 9, 2008, that it planned to debut the CHASE WHAT MATTERS mark as the centerpiece of a national rebranding campaign designed for highest visibility among the entire U.S. public.  *Id.* at ¶ 18.  This announcement was widely reported, including in *The New York Times*.  *Id.*  The CHASE WHAT MATTERS campaign is "the first overhaul of Chase's brand advertising since its 2004 merger with Bank

One. The ads . . . will be used throughout the bank's wide range of consumer business, including credit cards, student loans and retail banking." *Id.* The CHASE WHAT MATTERS advertising campaign began with print ads in major newspapers on January 13, 2008, and in television commercials and other media starting on January 14, 2008. *Id.* at ¶ 10. A representative CHASE WHAT MATTERS print advertisement is attached to the Iacullo Affidavit as Exhibit S.

The first new CHASE WHAT MATTERS television advertisements aired yesterday during the "Today Show" on NBC and on "Good Morning America" on ABC, both starting at 7:00 a.m. EST. *Id.* Chase's plans include additional advertisements on ABC, CBS, and NBC nationally, as well as on various cable networks, including the Food Network, HGTV, and The History Channel. *Id.* Chase also plans to show advertisements featuring the CHASE WHAT MATTERS mark during such television programming as the Super Bowl pre-game show, Oprah Winfrey's pre-Academy Awards interview special, and popular prime-time shows such as "Grey's Anatomy," "American Idol," "Prison Break," and "Boston Legal." *Id.*

Online, CHASE WHAT MATTERS advertising will appear on high-impact web sites such as <yahoo.com> and <msn.com>. *Id.* In addition to newspapers and magazines, Chase plans to showcase the CHASE WHAT MATTERS campaign in the March issue of *O*, Oprah Winfrey's magazine. *Id.* Chase also plans to make extensive use of outdoor and out-of-home advertising media, including subways, public transit stations, billboards, and movie theater trailers. *Id.* Finally, Chase has a web site at chasewhatmatters.com that prominently displays the mark.

Chase executives say that they will spend more than $70 million on the CHASE WHAT MATTERS advertising campaign during the first two and one half months of 2008 alone. *Id.* at ¶ 21.

III.    **ARGUMENT**

Temporary restraining orders are emergency remedies issued to maintain the status quo until a hearing can be held on an application for a preliminary injunction.  *Coca-Cola Co. v. Alma-Leo U.S.A., Inc.*, 719 F. Supp. 725, 726 (N.D. Ill. 1989).  "The standards for a temporary restraining order and a preliminary injunction are identical."  *Bernina of America, Inc. v. Fashion Fabrics Int'l, Inc.*, 2001 U.S. Dist. LEXIS 1211, 2001 WL 128164, at *1 (N.D. Ill. Feb. 9, 2001).

Northern Trust is entitled to a TRO and preliminary injunction because (1) it is likely to succeed on the merits; (2) it is suffering irreparable injury for which it has no adequate remedy at law; (3) the balance of harms favors Northern Trust; and (4) the public interest favors enjoining Chase.  *See Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 461 (7th Cir. 2000).

A.      **Northern Trust Is Likely To Succeed on the Merits of its Claims.**

In the Seventh Circuit, a plaintiff needs only show a "better than negligible" likelihood of success on the merits to be entitled to a preliminary injunction.  *Ty, Inc. v. Jones Group Inc.*, 237 F.3d 891, 897 (7th Cir. 2001).  Northern Trust's likelihood of success far exceeds this minimal threshold.  To prevail on its Lanham Act and state law claims, Northern Trust must show that (a) it has protectable trademark rights in the WHAT REALLY MATTERS marks and, (b) Chase's use of the CHASE WHAT MATTERS mark is likely to cause confusion.  15 U.S.C. § 1125(a); 15 U.S.C. § 1114; *Ty, Inc.*, 237 F.3d at 897.

1.      **Northern Trust Owns Protectable Trademark Rights in the WHAT REALLY MATTERS Marks.**

Northern Trust's ownership and use in commerce of the WHAT REALLY MATTERS marks is not in question.  Through applications filed with the Trademark Office in July 2005, Northern Trust registered both its WHAT REALLY MATTERS mark and its THE FREEDOM TO FOCUS ON WHAT REALLY MATTERS mark.  These marks have been used widely by

Northern Trust in connection with its banking and financial services continuously since January 2006, and they appear prominently on Northern Trust's marketing materials.

### 2.    Chase's Use of the CHASE REALLY MATTERS Mark is Likely to Cause Confusion.

Chase's ad campaign is likely to cause confusion across the board.  Northern Trust is especially concerned about reverse confusion.  "Reverse confusion occurs when a large junior saturates the market with a trademark similar or identical to that of a smaller, senior user.  In such a case, the junior user may not seek to profit from the good will associated with the senior user's mark.  Nonetheless, **the senior user is injured because the public comes to assume that the senior user's products are really the junior user's, or that the former has become somehow connected to the latter**.  **The result is that the senior user loses the value of the trademark – its product identity, corporate identity, control over its goodwill and reputation, and ability to move into new markets**."  *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 957 (7th Cir. 1992) (emphasis added, citations and quotation marks omitted).  *See also Peacable Planet, Inc., v. Ty, Inc.*, 362 F.3d 986, 992-93 (7th Cir. 2004) (same); *Custom Vehicles, Inc., v. Forest River, Inc.*, 476 F.3d 481, 484 (7th Cir. 2007) (same). *See generally Big O Tire Dealers, Inc., v. Goodyear Tire & Rubber Co.*, 561 F.2d 1365 (10th Cir. 1977).  The present situation cannot be described better.

In determining whether confusion is likely, courts in this Circuit analyze the following factors:  (1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products or services; (3) the area and manner of concurrent use; (4) the degree of care likely to be exercised by consumers; (5) the strength of the complainant's mark; (6) actual confusion; and (7) the intent of the defendant to "palm off his products as those of another." *Sands*, 978 F.2d at 959.  The weight accorded to these factors may vary depending on the facts of a case.

*Meridian Mut. Ins. Co. v. Meridian Ins. Group*, 128 F.3d 1111, 1115 (7th Cir. 1997). Here, they overwhelmingly favor a finding of likelihood of confusion. *See, e.g.*, *TV Land, L.P., v. Viacom Int'l, Inc.*, 908 F. Supp. 543, 550-55 (N.D. Ill. 1995) (granting preliminary injunction based on reverse confusion).

a)      Similarity

The first factor, the similarity of the marks, favors Northern Trust. As the Trademark Office correctly noted in connection with the CHASE WHAT MATTERS application, Chase's and Northern Trust's marks "both contain the words 'WHAT' and 'MATTERS,' which have the same sound, spelling, and meaning." *See* Iacullo Aff. at ¶ 17. As a junior user, Chase has a duty to avoid confusion with Northern Trust's WHAT REALLY MATTERS marks. *See, e.g., Forum Corp. of North America v. Forum, Ltd.*, 903 F.2d 434, 440-41 (7th Cir. 1990).

Importantly, Chase uses its CHASE brand name in connection with WHAT MATTERS. This greatly exacerbates the likelihood of confusion. In reverse confusion cases, "the linking of the plaintiff's mark with the defendant's brand name is an aggravation, not a justification. *Sands*, 978 F.2d at 960. *See also id.* at 954 ("[I]t is precisely the strong association between Gatorade and 'Thirst Aid' created by Quaker's ads that is likely to create confusion in this case").

b)      Services

Both Northern Trust and Chase offer a full array of banking and related financial services under the marks in question. Their services are thus virtually the same.

c)      Concurrent Use

Chase's advertising blitz is designed to reach the entire U.S. population. National TV ads will run on the Super Bowl pre-game show and on Oprah Winfrey's pre-Academy Awards interview special, as well as on ABC, CBS, NBC and Fox, including on the "Today Show," "Good Morning America," "Grey's Anatomy," "American Idol," "Prison Break," and "Boston

9

Legal," in addition to channels such as Food Network, HGTV, and The History Channel.  *See* Iacullo Aff. at ¶ 10.  Online ads will appear on <yahoo.com> and <msn.com>.  *Id.*  Subways, public transit stations, billboards, and movie theater trailers will feature Chase's ads.  *Id.*  The Nation will be blanketed with CHASE WHAT MATTERS ads.  There will be no escaping them.

Northern Trust's U.S. customers and potential customers will, of course, be exposed to Chase's ads as well.  This consumer group has also been exposed to Northern Trust's own ad campaign involving the WHAT REALLY MATTERS Marks.  Thus, the marks will be used concurrently, and the viability of Northern Trust's marks in both Northern Trust's existing and new markets will be severely compromised.

<em>d)      Consumer Care.</em>

Consumer sophistication will be of no help in preventing the serious, indeed irreparable, harm that Northern Trust will suffer from Chase's saturation use of CHASE WHAT MATTERS. This lies in the very nature of Chase's ad campaign, which appears on all popular media (print, radio, TV, Internet), is designed to reach the entire U.S. population, and is fueled by expenditures in excess of $72 million through March of this year.

Northern Trust  has a reputation, among its clients and potential clients, for "high-touch" service, and it uses the WHAT REALLY MATTERS mark to promote that service.  Chase's ad campaign will be everywhere, and Northern Trust's clients and potential clients will inevitably see it.  Chase's use of a near-identical mark, and especially in combination with the CHASE house mark, will confuse Northern Trust's clients and potential clients.  Northern Trust's campaign, instead of strengthening Northern Trust's goodwill, will instead promote Chase's services, and will confuse Northern Trust's clients and potential clients about the distinctive nature of Northern Trust's services.  This is exactly the kind of devastating trademark injury the Seventh Circuit described in *Sands, Taylor*.

10

The likelihood of consumers' false belief that Northern Trust has become connected with Chase in some form is aggravated by Chase's own history of merger and of acquiring other financial institutions.  Chase has been an active acquirer of its banking competitors, purchasing Bank One Corporation in 2004, and The Bank of New York's consumer, small-business, and middle-market banking business in 2006.  *See* Iacullo Aff. at ¶¶ 13 - 14.  Most recently, at the same time as the launch of its CHASE WHAT MATTERS campaign, Chase completed a widely-reported acquisition of part of a mortgage portfolio belonging to British lender **Northern Rock**, a financial services company sharing the first element of its name with Northern Trust.  *Id.* at ¶ 15.  Indeed, Chase itself is the result of a merger of the Chase Manhattan Corporation with J.P. Morgan & Co.  *Id.* at ¶ 13.

Consumer sophistication and care therefore do not mitigate the insidious harm that Northern Trust will suffer from the reverse confusion caused by Chase's acts.

    e)  *Strength of Mark.*

The strength of a trademark "refers to the distinctiveness of the mark, or more precisely, its tendency to identify the goods sold under the mark as emanating from a particular. . . source."  *Sands*, 947 F.2d at 959.  In this situation, where reverse confusion is likely, the focus is on the commercial strength of Chase's mark, rather than on the strength of Northern Trust's mark.  *Id.* at 959-60.  Moreover, "the conjunction of defendant's trademark and the allegedly infringing term may actually increase the misappropriation by linking defendant's name to plaintiff's goodwill."  *Sands*, 947 F.2d at 954.  This is particularly true in reverse confusion cases, where "the linking of the plaintiff's mark with the defendant's brand name is an aggravation, not a justification."  *Id.* at 960.

Both factors – strength of the junior mark and connection of the junior mark with an extremely famous house mark – are present here to the highest degree.  The CHASE mark by

itself is one of the most powerful and famous marks in the entire banking industry.  The CHASE WHAT MATTERS advertising campaign, with expenditures of upward of $70 million in the first quarter of 2008 alone, will inevitably have an extremely powerful impact on consumers.

f)    <em>Actual Confusion</em>

Chase is now launching its CHASE WHAT MATTERS campaign.  Proof of actual confusion is not necessary to establish likelihood of confusion.  *Sands*, 978 F.2d at 960; *International Kennel Club, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1090 (7th Cir. 1988).

g)    <em>Intent.</em>

Chase's launch of its advertisements with knowledge of Northern Trust's prior rights and of the Trademark Office's finding of likelihood of confusion, constitutes wrongful intent.  *See, e.g., Sands*, 978 F.2d at 961 (holding that "[i]n a reverse confusion case. . . the defendant by definition is not palming off or otherwise attempting to create confusion as to the source of his product [and t]hus the 'intent' factor of the likelihood of confusion analysis is essentially irrelevant in a reverse confusion case").

**B.    Northern Trust has no Adequate Remedy at Law and Will Suffer Irreparable Harm if this Court does not Restrain and Enjoin Chase's Use of the CHASE WHAT MATTERS mark.**

Irreparable harm is presumed when a trademark plaintiff has shown a likelihood of success on the merits of its infringement claim.  *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813 (Fed. Cir. 2002) (holding that "it is well settled that injuries arising from Lanham Act violations are presumed to be irreparable") (citation omitted); *Eli Lilly*, 233 F.3d at 469.

Northern Trust is certain to suffer irreparable harm if Chase is permitted to continue infringing its WHAT REALLY MATTERS mark.  Northern Trust has spent millions of dollars and the past two years building client recognition of its WHAT REALLY MATTERS mark.  Moreover, Northern Trust has spent many decades cultivating a certain image and reputation,

12

which has now become closely linked with the WHAT REALLY MATTERS mark. Permitting Chase to use its ubiquitous presence to bulldoze Northern Trust's WHAT REALLY MATTERS Campaign with Chase's CHASE WHAT MATTERS campaign would destroy Northern Trust's investment in its own ad campaign and devastate its reputation as an independent private bank providing "high-touch" services to its clients.

This timing of Chase's launch of its CHASE WHAT MATTERS campaign makes injunctive relief particularly important. Chase launched the CHASE WHAT MATTERS campaign with print advertisements on January 13, 2008, and with television advertisements the next day. Chase plans to saturate the market with the CHASE WHAT MATTERS campaign, with advertisements during the Super Bowl and other prominent events. The longer Chase runs its infringing campaign, the greater the harm to Northern Trust. By enjoining Chase from continuing its infringing CHASE WHAT MATTERS campaign, this Court can mitigate consumer confusion, and hence harm to Northern Trust.

**C.    The Harm to Northern Trust Far Outweighs any Harm to Chase.**

The harm to Northern Trust associated with Chase's infringement of the WHAT REALLY MATTERS mark vastly outweighs any legitimate harm that Chase might claim. At present, Chase enjoys powerful brand recognition among the U.S. public for its banking services. Chase is now launching its CHASE WHAT MATTERS campaign. Northern Trust does not seek to interfere in any way with Chase's banking services, nor do those services depend on the CHASE WHAT MATTERS campaign. Chase's current brand image and recognition will suffer no harm whatsoever if the infringing campaign is enjoined. In short, a temporary restraining order and injunction will cause no cognizable harm to Chase.

Chase would lose the money it spent in ramping up for the infringing campaign. But that is entirely the result of Chase's own willful and reckless conduct. Northern Trust's WHAT

REALLY MATTERS is a registered trademark.  Northern Trust applied to register its mark in

July 2005.  Chase thus knew, or should have known, about Northern Trust's mark prior to

applying to register the CHASE WHAT MATTERS mark in October 2007.  In addition, the

Trademark Office cited Northern Trust's WHAT REALLY MATTERS registration in its office

action refusing registration to the CHASE WHAT MATTERS mark, giving Chase undeniable

actual knowledge of Northern Trust's mark prior to the launch of Chase's campaign.

Moreover, Northern Trust advised Chase of its concern that the CHASE WHAT

MATTERS mark infringes the WHAT REALLY MATTERS mark on January 9, 2008, the date

that reports announcing Chase's new campaign first were published.  Chase still decided to

proceed with the CHASE WHAT MATTERS campaign.  Any harm that flows to Chase from

such behavior is not the sort that a court should consider when weighing the equities of a case.

*See, e.g., Ty, Inc.*, 237 F.3d at 903; *Pride Communications Ltd. Partnership v. WCKG, Inc.*, 30

U.S.P.Q.2d 1185, 1192 (N.D. Ill. 1994) (when defendants began using their mark they should

have known of plaintiff's competing use; "they therefore acted at their peril that their own use

would be enjoined").

     **D.**     **The Public Interest Supports a Restraining Order and Immediate Injunctive Relief.**

The public interest supports an injunction to prevent consumer confusion.  *See, e.g.*, *Eli*

*Lilly & Co*, 233 F.3d at 469.  Until it is enjoined, Chase's CHASE WHAT MATTERS

advertising campaign will continue to cause confusion, injuring the public.  Immediate injunctive

relief thus is necessary to prevent the public, including Northern Trust's clients and potential

clients, from believing that Northern Trust has become associated with or acquired by Chase.

## IV.    CONCLUSION

Northern Trust is likely to prevail on its claims against Chase and is suffering irreparable harm.  The balance of harms and public interest favor the grant of a temporary restraining order and preliminary injunction.  Accordingly, Northern Trust respectfully requests that this Court enter the requested order.

Dated: January 16, 2008                     Respectfully submitted,

                                            PATTISHALL, McAULIFFE, NEWBURY,
                                              HILLIARD & GERALDSON LLP

                                            By:  s/David Hilliard
                                                  David C. Hilliard
                                                  Uli Widmaier
                                                  Teresa D. Tambolas
                                                  Ashly Iacullo
                                                  311 South Wacker Drive, Suite 5000
                                                  Chicago, Illinois  60606
                                                  (312) 554-8000

                                            *Attorneys for Plaintiff, Northern Trust Corporation*