IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NORTHERN TRUST CORPORATION, a Delaware Corporation, <br><br> Plaintiff, <br><br> v. <br><br> JPMORGAN CHASE & CO., a Delaware Corporation, <br><br> Defendant. | Case No. 08-C-297 <br><br> Hon. William T. Hart, U.S.D.J. <br><br> Hon. Arlander Keys, U.S.M.J. |

## DECLARATION OF JEFFREY M. SAMUELS

I, Jeffrey M. Samuels, declare as follows:

1.　My name is Jeffrey M. Samuels. I am the director of The Center for Intellectual Property Law and Technology and the David L. Brennan Professor of Law at the University of Akron School of Law. I am legally competent to make this Declaration. Unless otherwise stated, the facts set forth below are based upon my own personal knowledge and my review of records that are publicly available on the web-site of the United States Patent and Trademark Office ("USPTO").

2.　Between November 1987 until January 1993, I served as an Assistant Commissioner of Patents and Trademarks of the USPTO, where I was the head of the USPTO's trademark division. In that position, I helped to establish and implement policy, procedures, and strategy on all facets of the USPTO's trademark operations, including legal and legislative issues, international cooperation, external relations, rulemaking, budget, personnel, automation, and labor/management issues. My duties also included serving as a statutory member of the

- 2 -

Trademark Trial and Appeal Board. In addition, between November 1989 and March 1990, and as needed between 1987 and 1993, I served as Acting Assistant Secretary of Commerce and Commissioner of Patents and Trademarks, where I was responsible for the overall management of the USPTO.

3. My complete curriculum vitae, which details the occasions on which I have provided testimony to Congress on intellectual property issues; my writings and presentations in the field of trademark and intellectual property law; and all of the positions I have held in organizations dedicated to intellectual property law issues, is attached hereto.

4. I am fully familiar with current USPTO practices and procedures respecting prosecution and examination of federal trademark application. I submit this Declaration to clarify certain issues related to such USPTO practices and procedures.

5. The official PTO database, http://tarr.uspto.gov, which is publicly available, states that a non-final office action is "a letter from the examining attorney requesting additional information and/or making an initial refusal. However, no final determination as to the registrability of the mark has been made."

6. I have reviewed the Office Action dated December 28, 2007 issued by the USPTO in connection with Chase's application (Ser. No. 77/308,911) to register the mark CHASE WHAT MATTERS.

7. In connection with the examination of a newly filed trademark application, it is not unusual for the USPTO to issue an Office Action letter similar to the one issued with respect to the CHASE WHAT MATTERS application stating a refusal under Section 2(d) of the United States Trademark Act, 15 U.S.C. § 1052(d) ("Section 2(d)"), for the mark – that is, that based on the review of the USPTO's database of registered marks, the USPTO has made a preliminary

determination that the mark is likely to be confused with some other mark subject to a federal registration.

8. The USPTO's criteria for determining whether or not confusion is likely between two marks is materially different from the criteria to be employed in a civil action for trademark infringement or unfair competition in a civil action. During the *ex parte* prosecution of a pending trademark application, the USPTO will examine the display of the newly filed mark not as it may be (or is intended to be) actually encountered by consumers in the marketplace, but, rather, as the mark is displayed in the drawing page of the examined application. *See Trademark Manual of Examining Procedure* § 1207.01(c)(iii) (5th ed. Sept. 2007) ("*TMEP*"). Similarly, during the prosecution stage, the USPTO does not consider whether or not overall appearance of packaging or other trade dress used (or intended to be used) with the examined mark might lessen or enhance the possibility of confusion between the examined mark and the previously registered mark of another. Furthermore, the USPTO, will presume that the subject trademark is (or will be) used with all goods and/or services specified in the application and, absent an express limitation in the application, that such goods will pass through all channels normal for such goods and/or services regardless of the marketplace reality. *See TMEP* § 1207.01(a)(iii).

9. Upon receipt of an Office Action letter specifying a preliminary determination that the applied-for mark should not be registered under Section 2(d), the applicant has the opportunity to respond to the Office Action and convince the USPTO that the mark is not likely to be confused with the mark(s) cited in the Office Action letter. In the USPTO's trademark registration process, this response is the very first opportunity that the applicant has to present argument and evidence showing that its mark should not be refused registration under Section 2(d).

10. After an applicant submits argument and evidence in response to an Office Action letter, it is not uncommon that the USPTO changes its position and allows registration of an applied-for mark that it preliminarily refused registration on Section 2(d) grounds – that is, following communication with the applicant, the USPTO determines that, in fact, the initially rejected mark is not likely to be confused with a previously-identified mark. In those cases, the USPTO withdraws its Section 2(d) refusal and approves the applied-for mark for publication for opposition purposes.

11. One common basis for seeking the withdrawal of an initial Section 2(d) refusal involves submission of evidence respecting use of third party marks for similar goods and/or services to establish that such marks "are so commonly used that the public will look to other elements to distinguish the source of the goods or services." *See TMEP* § 1207.01(d)(iii). Such evidence of third party use can be highly persuasive evidence that confusion is unlikely and that the Section 2(d) refusal should be withdrawn.

12. Based upon my review of the December 28, 2007 Office Action and the other publicly available USPTO file materials for the Chase application, it is my opinion that the Office Action is neither a definitive USPTO determination that Chase's mark is likely to cause confusion with Northern Trust's registered (No. 3,360,523) mark WHAT REALLY MATTERS or the other cited third party marks, nor a final refusal of Chase's application. Indeed, the USPTO has provided Chase with six months (until June 28, 2008) to present arguments and evidence explaining why the preliminary Section 2(d) refusal should be withdrawn and the application allowed. At this point in time, it cannot be known whether the USPTO will

- 5 -

ultimately make final its preliminary refusal to register CHASE WHAT MATTERS, or whether it will withdraw its preliminary Section 2(d) refusal and allow the application for registration.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 22, 2008, at Washington, D.C.

_____
Jeffrey M. Samuels