# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| NORTHERN TRUST CORPORATION, | ) | |
| a Delaware Corporation | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 08 C 297 |
| vs. | ) | |
| | ) | Hon. William T. Hart, U.S.D.J. |
| JPMORGAN CHASE & CO., | ) | |
| a Delaware corporation | ) | Hon. Arlander Keys, U.S.M.J. |
| | ) | |
| Defendant. | ) | |

## DEFENDANT JPMORGAN CHASE & CO.'S OPPOSITION TO PLAINTIFF'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION

Defendant JPMorgan Chase & Co. ("Chase") hereby submits its opposition to Plaintiff Northern Trust Corporation's ("Northern Trust") Application for a Temporary Restraining Order ("TRO") and Motion for Preliminary Injunction (Docket Nos. 12-14).

## INTRODUCTION

Northern Trust bases its request for a TRO on: the unsupported assertion that it has extensively used two slogans, THE FREEDOM TO FOCUS ON WHAT REALLY MATTERS and WHAT REALLY MATTERS, for the financial services it provides to affluent individuals; the fact that it has registered the slogans; and its unfounded contention that Chase's use of CHASE WHAT MATTERS is likely to cause confusion with its use of those slogans.  Chase opposes Northern Trust's motion on the following grounds:

(1)     Northern Trust cannot prevail because there is no likelihood of confusion.

- Northern Trust's slogans are weak marks that have been used very little;

- The common terms in the Northern Trust and Chase slogans are "What" and "Matters" and are widely used by third party financial services businesses, including numerous banks;

- Northern Trust's and Chase's slogans are overall dissimilar and distinguished by additional terms in them, *e.g.*, the famous CHASE name and octagon logo;

- Chase's current campaign has a highly distinctive look and feel combining sound and art, including the widely-recognized Chase name and octagon logo; and

- CHASE WHAT MATTERS is used for a Chase business that is both very different than Northern Trust's business and directed at very different customers.

(2)    If the TRO is not granted, Northern Trust will not be harmed.

- Northern Trust has made little use of its claimed mark; and

- Northern Trust's use of its claimed marks has co-existed for years with numerous other bank WHAT MATTERS and WHAT REALLY MATTERS names and marks.

(3)    The balance of harm favors Chase.

- Chase's current advertising campaign which employs numerous "Matters" claims along with CHASE WHAT MATTERS represents an enormous investment and is critical to Chase's competitive position; and

- If a TRO is granted, Chase's retail banking business will suffer a devastating blow.

## STATEMENT OF FACTS

### I.    NORTHERN TRUST'S WEALTH MANAGEMENT BUSINESS AND LIMITED SLOGAN USE

Northern Trust is a leading provider of investment management, asset servicing, and fiduciary services, primarily for affluent individuals and families, as well as institutions. Northern Trust's Memorandum in Support of its motion ("NT Memo."), Docket No. 14 at 2.  It places a premium on understanding its wealthy clients and their special needs.  Complaint, Docket No. 1 at ¶¶ 6-8. Northern Trust's 85 U.S. offices are located within a 45-minute drive of approximately half of the nation's millionaire households.  NT Memo. at 2.  "No other private bank in the United States has as many offices exclusively focused on the affluent market." Complaint at ¶ 8.

2

Northern Trust claims that in 2006, it began using two (2) new slogans as trademarks in connection with its wealth management business: THE FREEDOM TO FOCUS ON WHAT REALLY MATTERS and WHAT REALLY MATTERS. Complaint, Docket No. 1, at ¶ 11. Since adopting these phrases, Northern Trust has chosen to make little use of them. In support of its motion, Northern Trust has not offered any television commercials or any print ads run in magazines, newspapers or other third party publications that make any use of either claimed mark. Research conducted for Chase did not disclose any print ads using the claimed mark. Declaration of David A. Clifton ("Clifton Decl.") at ¶ 25. Nor is any such use displayed in the public area of Northern Trust's main facility in downtown Chicago. Declaration of Elizabeth Deaton at ¶¶ 6-7. It is even difficult to find any use of WHAT REALLY MATTERS on Northern Trust's extensive website. Further, neither THE FREEDOM TO FOCUS ON WHAT REALLY MATTERS nor WHAT REALLY MATTERS is included in the list of Northern Trust's trademarks displayed on its website. Declaration of Jennifer L. Gregor ("Gregor Decl.") at ¶ 12, Exh. 9.

In Northern Trust's commercials, the slogan use is limited to displaying "what really matters" beneath a much larger display of the Northern Trust name and logo for approximately two (2) seconds. Clifton Dec. ¶ 8, Exh. 11 (*e.g.,* Actually Forty-Seven, Kite in the Clouds, Quality Advice, and Too Many Fish advertisements). While Northern Trust's unverified Complaint claims that it spent in excess of $9 million and $10 million dollars in 2006 and 2007, respectively, evidence developed for Chase indicates to the contrary, Clifton Decl. at ¶ 25. Research conducted for Chase disclosed no Northern Trust print advertising and only $1.9 million of television advertising, not all of which used one of the slogans, by it during this period. *Id.*

Finally, to the limited extent Northern Trust does use these slogans, it is merely to promote its wealth management services as freeing its affluent customers to spend more time on personal activities such as recreation and spending time with family. *See* Clifton Dec. ¶ 8, Exh. 11. The import of this advertising is that "what really matters" is these personal activities of its customers. *See* Clifton Dec. ¶ 8, Exh. 11.

3

II.     **THIRD PARTY "WHAT MATTERS" MARKS**

In addition to Chase and Northern Trust, numerous other financial services companies use marks incorporating "What Matters" or "What Really Matters". In its submission in support of its TRO motion, Northern Trust does not mention any of them, or that most of them began before Northern Trust's claimed first use of its slogans as trademarks. As shown in the declaration of Jennifer L. Gregor submitted herewith, those uses include the following registered and unregistered names and marks:

A.     **Banking Services:**

**DELIVERING WHAT MATTERS MOST:** Student Loan Funding Resources, LLC, for student loans.

**WHAT MATTERS:** Washington Mutual, Inc. ("WaMu"), for banking services.

**PROTECTING WHAT MATTERS TO YOU:** WaMu for, *inter alia*, annuities.

**IN TOUCH WITH WHAT MATTERS TO YOU:** Sawyer Savings Bank, for banking services.

**HELPING YOU WITH WHAT MATTERS:** High Point Bank, for banking services.

**MAKING OUR CUSTOMERS SMILE IS WHAT MATTERS MOST:** First Commonwealth for banking services.

**PROTECT WHAT MATTERS MOST:** BankFirst for banking services.

Gregor Decl. at ¶¶ 14-18, 20, 24, 27-27, Exs. 11, 12-17, 21, 24-15.

B.     **Other Financial Services:**

**WHAT REALLY MATTERS:** Merrill Lynch & Co. used until at least 2005.

**WHAT REALLY MATTERS!:** Cathedral Financial Group, Inc. for promoting its investment services, including, *inter alia*, investment management, asset management and estate conservation, through a weekly radio program offered under the mark.

**INVESTING BASED ON THINGS THAT REALLY MATTER:** Winslow Management Company, LLC for "investment management services; financial portfolio management services; asset management services; mutual fund services, namely, mutual fund investments."

4

**UNDERSTANDING WHAT MATTERS TO YOU** and **MANAGING WHAT MATTERS TO YOU:** Horst Group of Lancaster, Pennsylvania for real estate property management services.

**FOCUSING ON WHAT MATTERS & Design:** The Peterson Team of San Diego for home loan and mortgage services under the mark.

**FOCUSED ON WHAT MATTERS:** Brad Korb for home loan and mortgage services under the mark.

**WHAT MATTERS TO YOU:** Safeco Insurance Company of America of Seattle for insurance services.

**PROTECTING WHAT MATTERS TO YOU WITH LIFE INSURANCE**: Wescom Credit Union of Pasadena for life insurance services.

**FOR WHAT MATTERS MOST:** Schultheis Insurance for insurance services.

**INSURING WHAT MATTERS MOST . . . :** New Tampa Insurance for its insurance agency services.

**FOCUS ON WHAT MATTERS:** Automatic Data Processing, Inc. for financial management services.

Gregor Decl. at ¶¶ 29-40, 41, 43-46, 52-55, Exs. 26-37, 39-43, 50-52.

### III.     CHASE WHAT MATTERS

####     A.     Chase Retail Banking Business And Current Campaign

Chase is using CHASE WHAT MATTERS as part of a national campaign involving numerous "Matters" claims about its retail banking business, namely "Protection Matters," "Complete Control Matters," "Rewards for Being You Matters," "24/7 Matters,", and "More Value Matters." Clifton Decl. ¶¶ 2 & 8, and Exs. 1-11. This is to tell the mass market that Chase provides a package of retail banking services, not complex wealth management. *See id.* ¶ 8. This "Matters" campaign prominently features the famous house mark CHASE that is conspicuously set off by its stylized font (**CHASE**) and is used in every printed advertisement with the familiar Chase logo (**CHASE** ◉). *Id.* ¶¶ 11-15 & Exs. 1-11.

The Chase campaign is being run only for its retail banking services business. *See id.* ¶¶ 3 & 24. The Chase retail banking business is distinctly different from Northern Trust's wealth

CHIC_1750845.4

management business.  Northern Trust acknowledges that it does *not* "provide services related to retail banking, consumer financial, [or] credit cards," which is exactly the business for which Chase is using its "Matters" campaign.  *Compare* Gregor Decl. ¶ 11 Ex.8 at 4, *with* Clifton Decl. ¶¶ 3,4 & 8.  Consequently, the target market for Chase's campaign is the consumer banking mass market, not affluent investors looking for wealth management.  *See* Clifton Decl. ¶ 23

The Chase "Matters" campaign, comprises a major undertaking critical to its business.  It involves the use of out-of-home advertising using CHASE WHAT MATTERS that is already in place in "its more than 3,000 branches, on billboards, taxi cabs and other public carriers, and in many other locations.  Clifton Decl.¶ 9.  The slogan has been incorporated in ads that have been printed in major national third party publications (*e.g.*, *Oprah Magazine*) costing many millions of dollars for advertising space.  *See id.* ¶¶ 17 & 18.  In addition, Chase spent over $6.5 million to produce a number of television commercials for the Campaign.  *Id.* ¶ 19.  Across all advertising media, Chase is committed to spending over $17.5 million during the next two weeks alone.  *See id.* ¶ 16.

Chase has made its massive commitments to the "Matters" campaign because the first three months of the year is a key marketing period in the retail banking sector.  *Id.* ¶ 22.  The next two weeks are particularly critical because of the prominence of Super Bowl related broadcasts which comprise much of Chase's investment.  Chase does not have another commercial, much less a campaign, to use.  *Id.* ¶ 20.  As a result, if Chase does not keep running its "Matters" campaign during this period, it will not only lose its massive financial investment, it will suffer a substantial setback in its competitive position in the retail bank market with an indeterminable negative impact.  In short, Chase will be severely damaged by an interruption in the campaign.  *Id.* ¶ 22.

### B.    The Status Of Chase's Trademark Application

Chase applied (Ser. No. 77/308,911) to register CHASE WHAT MATTERS with the United States Patent and Trademark Office ("USPTO").  Following an initial examination of the application, on December 28, 2007, the USPTO sent a letter called an "Office Action" informing Chase that it had made a preliminary finding that the application could eventually be denied because the mark was likely to be confused with two registered marks (*i.e.*, Northern Trust's WHAT REALLY MATTERS and Student Funding Loan Resources, LLC's DELIVERING

6

WHAT MATTERS MOST).  This Office Action is not a final rejection of Chase's application. *See* Complaint Exs. 7(a) & 7(b); *see also* Samuels Decl. at ¶ 12; *see generally* Samuels Decl. at ¶¶ 7, 8, 9-11.  Rather, Chase has until June 28, 2008 to respond with additional evidence, *e.g.*, the third party use discussed above, and argue that the preliminary finding is erroneous and that the application should be allowed.  Samuels Decl. at ¶ 12.

The issuance of such an Office Action respecting a preliminary finding that the applied-for mark may be confusingly similar to a previously registered mark is wholly unexceptional. *Id*. ¶¶ 5 & 7.  It often is overcome and the registration is allowed.  *See id*. ¶¶ 9-11.  Historically, both Northern Trust and Chase have overcome initial refusals by the USPTO based on possible likelihood of confusion with other marks.  *E.g,* Northern Trust marks NORTHERN TRUST FUNDSTRATEGY (Reg. 2,325,161); PASSPORT (Reg. 2,825,528); BUSINESS PASSPORT (App. 76/117,271); and PRIVATE PASSPORT (App. 76/117,266); and Chase marks PROTECTED PORTFOLIO (App. 78/924,835); CHASE EQUILINE (Reg. 3,340,975); CLASSIC BENEFITS (App. 78/925,528); EXCLUSIVE EXTRAS (Reg. 3,307,203); FEATURE PORTFOLIO (App. 78/790,593); and IMAGE DEPOSIT DIRECT (App. 78/924,744).  Gregor Decl. ¶¶ 57-66 & Exs. 54-63.

## ARGUMENT

## I. THE APPLICABLE STANDARD FOR TEMPORARY RESTRAINING ORDERS AND PRELIMINARY INJUNCTIONS

Temporary restraining orders are emergency remedies issued to maintain the status quo until a preliminary injunction hearing.  *Coca-Cola Co. v. Alma-Leo U.S.A., Inc.*, 719 F. Supp. 725, 726 (N.D. Ill. 1989).  "The standards for a temporary restraining order and a preliminary injunction are identical."  *Bernina of America, Inc. v. Fashion Fabrics Int'l, Inc.*, 2001 U.S. Dist. LEXIS 1211, 2001 WL 128164, at *1 (N.D. Ill. Feb. 9, 2001).  Such relief should not be ordered "unless the movant, by a clear showing, carries the burden of persuasion," *Goodman v. Illinois Dept. of Fin. & Prof. Reg.*, 430 F.3d 432, 437 (7th Cir. 2005), because this is a very serious remedy, "never to be indulged in except in a case clearly demanding it."  *Barbecue Marx, Inc. v. 551 Ogden, Inc.,* 235 F.3d 1041, 1044 (7th Cir. 2000) (citations omitted).

As Northern Trust acknowledges, the factors to be considered are whether: (1) it is likely to succeed on the merits; (2) it is suffering irreparable injury; (3) the balance of harms favors

Northern Trust; and (4) the public interest favors enjoining Chase. *See Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 461 (7th Cir. 2000). Here, each factor mandates that Northern Trust's request for a temporary restraining order be denied.

## II.    NORTHERN TRUST IS NOT REASONABLY LIKELY TO SUCCEED ON THE MERITS

### A.    There Is No Likelihood of Confusion

Northern Trust concedes that "[t]o prevail on its Lanham Act and state law claims, Northern Trust must show that… Chase's use of CHASE WHAT MATTERS is likely to cause confusion." NT Memo. at 7. This confusion must be among an "appreciable" number of consumers. *James Burrough, Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266, 274 (7th Cir. 1976). The relevant factors in determining likelihood of confusion are: (1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products or services; (3) the degree of care likely to be exercised by consumers; (4) the area and manner of concurrent use; (5) the strength of the complainant's mark; (6) actual confusion; and (7) the intent of the defendant to "palm off his products as those of another." *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 643 (7th Cir. 2001). Here, every factor favors Chase.

#### 1.    *The Marks Are Not Similar*

In analyzing their similarity, the parties' respective marks must be considered in their entireties. *Packman,* 267 F.3d at 643 ("In determining whether two marks are similar, the comparison is made in light of what happens in the marketplace, and not merely by looking at the marks side-by-side.") (internal quotation marks omitted). Here, there is no overall similarity in sound, appearance or meaning between either of Northern Trust's WHAT REALLY MATTERS and FREEDOM TO FOCUS ON WHAT REALLY MATTERS and Chase's claimed mark CHASE WHAT MATTERS. In fact, the only similarity is the common use of the common terms "what" and "matters", which, as discussed above, are severely diluted because of wide use by numerous banks. *See supra* at 3-5. Given the ordinary nature of the common terms, the use of other terms in these marks is more than sufficient to distinguish each of them from one another. *See*, *e.g.*, *Autozone, Inc. v. Strick*, 466 F. Supp. 2d 1034, 1040 (N.D. Ill. 2006) (use of "zone" in AUTO-ZONE, OIL-ZONE, and WASH-ZONE not likely to cause confusion); *Freudenberg Household Prods. LP v. Time Inc.*, 2006 U.S. Dist. LEXIS 20774, at *13-14 (N.D. Ill. Apr. 18, 2006) (use of words *life* and *easier*); *First Sav. Bank, F.S.B. v. First Bank Sys., Inc.*,

8

101 F.3d 645, 655 (10th Cir. 1996) (additional word in FIRST BANK SYSTEM creates dissimilarity with FIRSTBANK).

The fact that CHASE WHAT MATTERS begins with the famous house mark CHASE further prevents a likelihood of confusion. *See S Indus., Inc. v. JL Audio, Inc.*, 29 F. Supp. 2d 878, 889 (N.D. Ill. 1998) ("The use of a brand name, particularly a well known one . . . is likely to reduce the likelihood of confusion as to the source of the product."); *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 839-43 (9th Cir. 2002) (no reverse confusion where two companies used tagline "Where Pets are Family" along with their house marks); *see also St Croix of Park Falls, Ltd. v. Maurice Sporting Goods, Inc.*, No. 00 C 1394, 2000 WL 1053961, *3 (N.D. Ill. July 31, 2000) ("The use of a house mark tends to reduce the likelihood that consumers will be confused as to the source of the product, particularly where, as here, the house mark is the dominant feature of the allegedly infringing mark."). This is particularly true where, as here, the common terms after the CHASE house mark are weak terms, such as the heavily diluted "What" and "Matters."

The manner in which the marks are presented also must be considered. Here, CHASE WHAT MATTERS is usually displayed with Chase's well known () mark and octagonal logo, just as Northern Trust displays its slogan with its name and logo. Clifton Decl. at ¶¶ 11-14. Further, the look, feel and messages of the Chase advertising is distinctly different from that of the scant relevant Northern Trust marketing materials. *Compare* Complaint Ex. 1, *and* Clifton Decl., Exh. 12, *with* Clifton Decl., Exh. 1-11. The Chase advertising communicates to consumers that Chase offers financial product features and services that matter in selecting a bank. Northern Trust uses its slogans to convey a wholly different message, *i.e.*, giving the affluent the freedom to focus on things outside of their financial life that are important to them.

Northern Trust simply ignores all of the foregoing, attempting instead to rely upon the USPTO's preliminary refusal to grant Chase's pending application to register CHASE WHAT MATTERS. *See supra* at 6-7. This ignores the fact that Chase still can overcome the preliminary refusal and have its application granted. *See id.* (both Chase and Northern Trust repeatedly have successfully rebutted similar refusals); *see also Packerware Corp. v. Corning Consumer Products, Co.*, 895 F. Supp. 1438, 1449 (D. Kan. 1995) (First office action determination of the Trademark Office "is of little probative value."). It also ignores the fact that the criteria used by the USPTO in making a likelihood of confusion determination in an *ex parte*

9

trademark application examination are materially different than those used by courts in determining likelihood of confusion in a trademark infringement action.  *See* Samuels Decl. at ¶ 8; 4A L. Altman & M. Pollack, *Callman on Unfair Competition and Monopolies* §§ 26:47 & 26:57.50 (4th ed. Dec. 2007).

### 2.    The Services Offered In Connection With The Marks Are Dissimilar

As shown above, the parties' respective financial services businesses are distinctly different.  Northern Trust focuses on providing wealth management services and expressly disclaims any intention of being a retail bank.  The Chase business in question, on the other hand, is exactly that, a retail bank, which does engage in the wealth management services offered by Northern Trust.

### 3.    Customers Exercise Great Care When Selecting Banking Services

It is well-established that "where consumers are sophisticated, deliberate buyers, confusion is less likely."  *Rust Env't & Infrastructure v. Teunissen*, 131 F.3d 1210, 1217 (7th Cir. 1997).  Here, the dispute involves financial services, an area where it has been repeatedly held that consumers make particularly careful decisions.  *See MB Fin. Bank, N.A.* v. *MB Real Estate Serv's, L.L.C.*, 2003 WL 22765022, at *6 (N.D. Ill. Nov. 21, 2003) ("banking" services is an area in which "consumers do not enter into lightly"); *Empire Nat'l Bank of Traverse City v. Empire of Am.*, 559 F. Supp. 650, 656 (W.D. Mich. 1983) ("bank customers exercise a greater degree of care than do customers of other businesses"); *Commerce Bancorp., Inc. v. BankAtlantic*, 285 F. Supp. 2d 475, 494 (D.N.J. 2003) ("people are especially selective in choosing their banking and financial services, and thus take great care in choosing such services").

Moreover, Northern Trust's customers are very high net worth individuals, whom Northern Trust trumpets – rather than disputes – are sophisticated customers. NT Memo. at 2-3. They are even more likely than the average banking consumer, therefore, to make careful financial services decisions.  Thus, it is simply not credible that such sophisticated individuals would be so inattentive as to think they are dealing with one bank, when, in fact, they are dealing with another.

CHIC_1750845.4

### 4.    Area And Manner Of Use

Both parties market nationally, but, as shown above, use their respective claimed marks in dramatically different manners.

### 5.    Northern Trust's Mark Is Weak And Entitled To Little Protection

As shown above, there is extensive third-party use of marks in the financial services sector that incorporate "what matters"[1] and, in some cases, "what really matters."  This alone shows that Northern Trust's claimed marks are weak in the sector.  *See Autozone*, 466 F. Supp. 2d at 1043; *Johnson Publ'g Co., Inc. v. Willitts Designs Int'l, Inc.*, No. 98 C 2653, 1998 U.S. Dist. LEXIS 9264, at 13 n.4 (N.D. Ill. June 22, 1998); *FS Serv's Inc. v. Custom Farm Serv's, Inc.*, 325 F. Supp. 153, 160 (N.D. Ill. 1970).

Further, Chase has used PHILANTHROPY MATTERS as the title of its newsletter on community involvement since 2004, Clifton Decl. ¶ 28 & Ex. 14, long before Northern Trust's adoption of its claimed marks.  In addition, Chase began using MONEY MATTERS in June 2006 and owns the registration (Reg. 3,347,860) for that mark for educational services "in the field of finance, banking and personal investing."  *See id.* ¶ 27 & Ex. 13; Gregor Decl. ¶ 56, Ex. 53.

Finally, Northern Trust has barely used its claimed marks.  It is noteworthy that Northern Trust has provided this Court with virtually no evidence of use.[2]  This is undoubtedly because when the slogans are used, it is not as a trademark, but merely as descriptive text or rhetoric used

---

[1]  Third party marks incorporating "What Matters" or "What Really Matters" include: DELIVERING WHAT MATTERS MOST; WHAT MATTERS; PROTECTING WHAT MATTERS TO YOU; IN TOUCH WITH WHAT MATTERS TO YOU; HELPING YOU WITH WHAT MATTERS; MAKING OUR CUSTOMERS SMILE IS WHAT MATTERS MOST . . . ; PROTECT WHAT MATTERS MOST; WHAT REALLY MATTERS!; INVESTING BASED ON THINGS THAT REALLY MATTER; UNDERSTANDING WHAT MATTERS TO YOU; MANAGING WHAT MATTERS TO YOU; FOCUSING ON WHAT MATTERS & Design; FOCUSED ON WHAT MATTERS; WHAT MATTERS TO YOU; WHAT MATTERS MOST; INSURING WHAT MATTERS MOST . . . ; and FOCUS ON WHAT MATTERS.  *See supra* at 7.

[2]  In fact, the only evidence of use offered up by Northern Trust is a copy of Northern Trust's 2005 Annual Report.  *See* Iacullo Decl. ¶ 2 & Ex. A.  Northern Trust's 2006 Annual Report reveals that Northern Trust abandoned even this minimal use.  *Id.*

CHIC_1750845.4

to describe the company – that is, the phrases do not identify Northern Trust.[3]  Gregor Decl. ¶¶ 6-10, Exs. 3-7.  An example of this Northern Trust use is found in its *Wealth* magazine which is distributed to its affluent clientele: "What really matters is a portfolio's ability to help you achieve your goals."  Gregor Decl. ¶ 10, Ex. 7.  This further confirms that the claimed marks are entitled to very little, if any, protection.[4]

**6.    There Has Been No Actual Confusion**

Northern Trust has not offered evidence, and Chase is not aware, of any actual confusion.  While such evidence of actual confusion is not required, "a finding of likely confusion can no more be based on conjecture or a fetching narrative alone than any other finding or an issue on which the proponent bears the burden of proof."  *Libman v. Vining*, 69 F.3d 1365, 1363 (7th Cir. 1995).

**7.    Chase Does Not Intend To Palm Off Its Services As Those Of Northern Trust**

Contrary to Northern Trust's contention, intent is not relevant in "reverse confusion" cases.  As stated in *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 957 (7th Cir. 1992), cited by Northern Trust, "[i]n a reverse confusion case…the defendant by definition is not palming off or otherwise attempting to create confusion as to the source of his product [and t]hus the 'intent' factor of the likelihood of confusion analysis is essentially irrelevant in a reverse confusion case."  Even if it were, however, the Chase "Matters" claims advertising campaign demonstrates that Chase is not attempting to make it appear that Chase is offering wealth management services like Northern Trust, or that it acquired Northern Trust as the Complaint

---

[3] A claimed trademark must be used so that consumers perceive it as identifying the services' source.  *See In re Standard Oil Co.*, 275 F.2d 945 (C.C.P.A. 1960) (words GUARANTEED STARTING ordinary terms conveying information about the services, not a service mark for "winterizing" motor vehicles); *In re Melville Corp.*, 228 U.S.P.Q. 970 (TTAB 1986) (BRAND NAMES FOR LESS informational phrase that did not function as a mark for retail store services).

[4] Northern Trust's argument that its claimed marks are strong because it owns federal trademark registrations for them is simply wrong.  Federal trademark registration means only that there is "prima facie evidence" that the mark is valid; it does not mean that the mark has any particular degree of strength.  15 U.S.C. §1115(a).

12

alleges. The goal of the advertising campaign is to identify and promote to the general public Chase's package of various retail banking services that matter to the general public.

Northern Trust's assertion that Chase had a "wrongful" intent because it began using CHASE WHAT MATTERS after the USPTO issued its initial refusal to register that mark is, at best, disingenuous. As shown above, such an initial refusal says nothing about whether the mark will ultimately be registered. Northern Trust knows this because of its own practices responding to such initial refusals and overcoming them. *Supra* at 7.

> **B.    Plaintiff's "Reverse Confusion" Allegation Does Not Salvage Its Claim**

As discussed above, whether direct or reverse confusion is alleged, Northern Trust must prove likelihood of confusion. Without proof that confusion is likely based on the factors discussed above, there can be no confusion "of any stripe." *M-F-G Corp. v. Emra Corp.*, 817 F.2d 410, 412 (7th Cir. 1987). Northern Trust does not seriously argue that direct confusion is likely, thereby implicitly recognizing, *inter alia*, the power of the CHASE portion of CHASE WHAT MATTERS to distinguish Chase's slogan and services.

Recognizing that it cannot succeed on a traditional likelihood of confusion analysis, Northern Trust instead attempts to rely on a theory of "reverse confusion." Northern Trust's reverse confusion theory is wholly unsupported. Northern Trust simply provides no basis for concluding that any of its affluent Northern Trust customers will believe that the provider of Northern Trust's complex financial services is the Chase retail banking business. *Peaceable Planet, Inc. v. Ty, Inc.*, 362 F.3d 986, 987 (7th Cir. 2004) (In the "case of 'reverse passing off,' . . . the plaintiff complains that the defendant is trying to pass off the plaintiff's product as the defendant's."). However, reverse confusion amongst Northern Trust's sophisticated customer base is even less likely. Likewise, Northern Trust's assertion that the Chase campaign is going to cause its customers to believe that they are now dealing with Chase as a result of the acquisition of Northern Trust is illogical and pure speculation.

Nor is there any evidence Chase is trying to push Northern Trust out of the market, which is typical in reverse confusion cases. *Id.* at 987. The evidence is to the contrary. Although Chase and Northern Trust both have significant market power, they are in different sectors. Further, Chase is marketing via its slogan to mass market consumers, not Northern Trust's affluent customers. As noted earlier, the JPMorgan Chase lines of business that do compete with

Northern Trust are not marketed using "Chase What Matters," but are instead marketed using the JPMORGAN mark.  Thus, Chase's use of that slogan will not impact on Northern Trust.

## III.   NORTHERN TRUST IS NOT BEING IRREPARABLY HARMED BY THE CAMPAIGN

Northern Trust will suffer no significant harm if Chase continues to use CHASE WHAT MATTERS in its advertising.  As shown above, Northern Trust is barely using its claimed marks.  While it cites figures for its total advertising expenditures, it does *not* state how much it spent on advertisements that feature its marks.  As shown by Chase, Clifton Decl., ¶ 25, there is evidence that Northern Trust has spent less than $1.9 million for such advertising during the last two years.  Thus, there can be no harm to Northern Trust by Chase's continuing use of a different and distinctive mark when Northern Trust is not making significant use of the marks it now seeks to protect.  Moreover, Northern Trust long has coexisted with many other "What Matters" and "What Really Matters" marks for banking and related services.  *See supra* at 4-5.

## IV.   THE BALANCE OF HARM FAVORS CHASE

Northern Trust does not dispute that Chase would suffer substantial monetary losses from an injunction.[5]  The evidence shows that Chase would suffer other substantial harm as well.  At the most basic level, Chase will lose enormous credibility and momentum in the marketplace.  Consumers, media outlets and business partners will question Chase's credibility, causing incalculable harm if it is forced to stop its new campaign.

Even more important, the first calendar quarter is a key marketing period in the retail banking sector.  An injunction would strip Chase clean of its ability to compete effectively since it would essentially be without advertising or promotion support.  *Id*. at ¶ 22.  What the negative impact on its current consumer base would be is indeterminable beyond the certainty that it would be substantial.  *Id*. at ¶ 21.

---

[5] Chase has already committed to spend over $70 million for advertising in the first three months of 2008, over $35 million of which would be lost if the campaign were enjoined at this point.  Chase has committed over $34.7 million for television advertisements, only approximately $5.7 million of which can be cancelled at this time because many of the advertisements have been released, closed captioned, trafficked to networks, and integrated into broadcast schedules, and Chase stands to forfeit over $2.7 million in magazine advertising purchases and approximately $3.5 million spent on internet and newspaper media purchases and millions on out-of-home advertising.  Clifton Decl. ¶¶ 16 & 17.

14

## V.    A TRO WOULD HURT THE PUBLIC INTEREST

There is no evidence that Chase's continuation of its campaign would in any way harm the public.  Enjoining Chase's campaign, however, would hurt the public.  It would deny retail banking customers information regarding services offered by one of the competitors in that market.  This would hinder customers in making an informed decision as to which retail bank to use.

### **CONCLUSION**

For the foregoing reasons, Northern Trust cannot prevail on even one of the four (4) factors to be considered in determining whether the extraordinary remedy of a TRO should be granted.  What has been established, however, is that Chase would be severely harmed by the grant of a TRO and the public disserved.  Chase, therefore, respectfully submits that Northern Trust's motion should be denied.

Dated:  January 23, 2008                                    Respectfully submitted,


                                                            By:    s/ Jennifer L. Gregor
                                                            Craig S. Fochler (IL Bar No. 0840858)
                                                            Charles R. Mandly, Jr. (IL Bar No. 6185827)
                                                            Jennifer L. Gregor (IL Bar No. 6286281)
                                                            FOLEY & LARDNER LLP
                                                            321 North Clark Street, Suite 2800
                                                            Chicago, IL 60610-4764
                                                            312/832.4500
                                                            312/832.4700 – Fax

                                                            *Attorneys for Defendant*
                                                            *JPMorgan Chase & Co.*

OF COUNSEL:

Ira J. Levy
GOODWIN PROCTER LLP
599 Lexington Avenue
New York, New York, 10022
212/459-8800
212/355-3333 – Fax
ilevy@goodwinprocter.com

CHIC_1750845.4