IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NORTHERN TRUST CORPORATION,  )<br>  )<br>  Plaintiff,  )<br>  )<br>v.  )<br>  )<br>JPMORGAN CHASE & CO.,  )<br>  )<br>  Defendant.  )<br>_____) | Case No. 08-C-297<br><br>Hon. William T. Hart, U.S.D.J.<br><br>Hon. Arlander Keys, U.S.M.J. |

## DECLARATION OF DAVID A. CLIFTON

I, David A. Clifton, declare as follows:

1.  I am Senior Vice President and Marketing Director for the Chase lines of business at JPMorgan Chase & Co. ("Chase"). The facts set forth in this declaration are based on my personal knowledge and, if called as a witness, I could and would testify as to their truth.

2.  I understand that the matter before this Court involves a request for injunctive relief. In particular, Northern Trust Corporation seeks a temporary restraining order and a preliminary injunction that would prevent Chase from continuing with its $70 million first quarter launch of a national advertising campaign that centers around a series of "matters" claims relating to its retail banking services, such as Protection Matters," "Complete Control Matters," "24/7 Matters," "More Value Matters" and "Rewards For You Matters" that are tied together with the slogan "Chase What Matters" ("Campaign"). I make this declaration in order to provide facts regarding the Chase business, the Campaign and the serious, incalculable harm that would result to Chase if any order required it to halt running advertisements in this Campaign.

3.   JPMorgan Chase & Co. is a leading financial services firm that markets its services under three banking brands—JPMORGAN, JPMORGAN CHASE, and CHASE. Chase provides investment banking, financial transaction processing, asset management, and private equity services under the JP MORGAN mark, and retail banking services under the CHASE mark. The retail bank services offered under the CHASE mark include, among other things, credit cards, ATM's, checking, savings, home finance, home equity, and auto finance.

4.   In early 2007, Chase undertook to develop an overarching message and positioning strategy that would work across all lines of the Chase retail banking businesses. The purpose was to better promote all of Chase's mass market retail banking services.

5.   Chase dedicated over a year to the development and creation of the new overarching message and positioning, which involved the full time activity of approximately 40 outside advertising agency employees, 30 Chase advertising and marketing communications employees, and a significant portion of mcgarrybowen's (Chase's advertising agency) $9.1 million annual retainer.

6.   As part of this process, Chase, through its advertising agency, conducted interviews with Chase executives, interviews with consumers, secondary market, consumer and advertising research, and developed multiple recommendations for the project.

7.   One of Chase's goals behind the new positioning strategy was to distinguish Chase in the marketplace from other corporations providing consumer financial services by creating a unique, memorable, performance-based brand that was energetic, and spoke to the shared values of mass market retail banking consumers.

8.  As a result of these efforts, Chase adopted the Campaign which focuses on what matters to consumers in receiving retail banking services. The Campaign does this by using various "Matters" claims such as those discussed above and the slogan "Chase What Matters," which incorporates the CHASE service mark. True copies of representative specimens of Campaign advertising materials are attached hereto as Exhibits 1 through 11.

9.  On January 9, 2008, Chase announced in a press release that it was commencing the Campaign. Although certain features of the Campaign began prior to January 13, 2008 (such as advertising on billboards, taxicabs, and in subways in New York, and on billboards and in train stations in Chicago), the full nationwide roll-out of the campaign commenced that day. The "Matters" selling points and "Chase What Matters" slogan have appeared (or are scheduled to appear) in various media outlets including: television, newspapers, magazines, radio, internet, movie theatres. They also are used in displays in the thousands of Chase branches nationwide, and other signage outside of the branches.

10. The advertising developed for each of these media outlets is unique and distinct from any other advertising campaign (financial services or otherwise) using the terms "What" or "Matters." Indeed, the advertising material for the Campaign has a distinctive look and feel, intended to differentiate "Chase"-branded services from any other institution providing consumer financial services.

11. At the most basic level, the Campaign includes the famous house mark "Chase" that is conspicuously set off by its stylized font (CHASE). In fact, the house mark is part of the "Chase What Matters" slogan, and, every printed advertisement also includes the familiar Chase logo (CHASE ⬡ ).

3

12. Chase developed four television advertisements as part of the Campaign. *See* Exhibit 11. The advertisements are undeniably focused on Chase consumer financial services products, and distinctive in their look and feel from any other consumer financial services advertisement. Specifically, at the beginning of each television advertisement, the Chase octagonal logo ( ) appears in the bottom right hand corner of the screen. Moreover, each advertisement is filmed in black and white, with the exception of the "Chase" house mark and logo that is in the traditional "Chase-blue" whenever it appears on screen (both during and at the end of the advertisement). Each advertisement has high-energy, iconic background music and concludes with the Chase logo and internet address.

13. The Campaign print advertising also has a similar, high-energy feel and is undeniably advertising Chase-brand products. *See* Exhibits 5-9. First, the Chase logo ( ) appears on the lower left hand corner of each print advertisement. Indeed, the entire lower left hand corner of each advertisement contains the Chase octagonal logo in various sizes as part of the background. Second, the contact information provided in each advertisement unambiguously demonstrates that the advertisement is for a Chase-brand product as it features either Chase's internet address or telephone number.

14. Finally, the out-of-home advertising, which includes billboards, subway and train station, and taxi-tops, follows the unifying theme of the Campaign. *See* Exhibits 1-4, 10. Specifically, following the familiar theme of the print and television advertising, the out-of-home advertising prominently displays the Chase logo ( ) and octagonal logo in the lower left quadrant of the advertisement. Moreover, the majority of the out-of-home advertising has either a "Chase-blue" background or is black and white with "Chase-blue" accents.

4

15. The Campaign advertising also is appearing on the internet follow this same familiar theme.

16. Together Chase has spent and contracted to spend over $70 million for Campaign advertising in the first three months of 2008. The total value of the media activity for the next two weeks, alone, is approximately $17.6 million. These advertising commitments include television, newspaper, magazine, internet, displays in the thousands of Chase branches nationwide, and other signage outside of the branches. In addition, Chase has committed to multiple newspaper insertions on Sundays and one mid-week day across 183 publications in 46 cities, plus several business journals as part of the Campaign.

17. Any injunction by the Court requiring Chase to stop using "Chase What Matters" in its advertising would cause Chase to lose large amounts of advertising dollars that it has already spent or committed to spend and would cause Chase significant business disruption, and would waste significant resources that Chase has already expended over the past year developing the campaign. For example, such an injunction would cause Chase to forfeit major advertising commitments.

   a. Chase has committed over $34.7 million for television advertisements, only approximately $5.7 million of which can be cancelled at this time because many of these advertisements have been released, closed captioned, trafficked to networks, or integrated into broadcast schedules.

   b. Chase has secured prominent television advertisement placements for "Chase What Matters,"—including television advertisements during the Super-Bowl pre-game show, Oprah Winfrey's pre-Academy Awards

5

    interview special, and prime-time television programming—which would be lost if Chase was forced to stop the campaign at this point.

 c. Chase would forfeit over $2.7 million in magazine advertising purchases and $3.5 million in internet and newspaper purchases that cannot be refunded.

 d. Chase would be unable to recover any of the over $1 million it has spent to supply over 3,000 of its retail bank branches with "Chase What Matters" marketing material.

 e. Chase would be unable to recover over $6 million it has committed for other signage that incorporates "Chase What Matters," including billboards and advertisements on taxi cabs, buses, and in subway stations.

 18. Moreover, it would be impossible for Chase to stop all of the advertisements that are currently running or scheduled to run in the near future. "Oprah Magazine" is scheduled to have a major advertising spread dedicated to the "Chase What Matters" campaign, which is currently being printed and cannot be pulled from the issue at this late date. Likewise, newspaper advertisements scheduled to run in the short-term cannot be stopped. It would be difficult and time consuming to remove all the billboards and other signage that are already in place. There are also Campaign advertisements being run in movie theaters in 68 markets on 7,862 screens nationwide beginning on January 18, 2008, which cannot be canceled at this late date. It would also be enormously burdensome for Chase to pull from circulation all of the materials that incorporate "Chase What Matters" that have been distributed to Chase's 3,000

retail bank branches. In addition, it would be very difficult (if not impossible) to stop all of the television advertisements that have already been distributed from airing.

19. An injunction would also result in the loss of significant resources that were spent to develop the campaign. Chase spent approximately $6.5 million in production costs for television and internet advertising that will be wasted if the campaign does not go forward.

20. An injunction would also cause Chase significant business disruption, and in all likelihood will prevent Chase from engaging in any advertising activity for its consumer retail bank services business for the first three months of 2008. Chase has no replacement campaign, or even a commercial that could be run for the first three months of 2008 that would promote its line of retail bank services. Chase cannot simply replace ads that include "Chase What Matters" with ads that it ran previously. In many cases the time to reserve and book advertising placements has passed. Even if it could reserve media placements, in order to run an advertisement, one must also hold the rights to any music or actors used in the advertisement. Any rights that Chase previously had in its older advertisements have now lapsed, and Chase has limited or no rights to use those advertisements going forward.

21. Because advertising is a major driving force for Chase's consumer banking businesses, I estimate that its loss of business from the withdrawal of advertising in the first three months of 2008 would exceed tens of millions of dollars.

22. Apart from the severe monetary damage that will result if this injunction issues, Chase will suffer incalculable harm if it is prevented from using its "Chase What Matters" campaign. Chase made its massive Campaign commitments because the first 3 months of the year are critical advertising periods for the retail banking sector in which Chase competes. As a

CHIC_1752029.2

result, if Chase does not keep running its Campaign during this period, it will not only lose its massive financial investment, it will suffer a substantial setback in its competitive position in the retail bank market with an indeterminable negative impact. Further, because Chase and the media already have widely publicized its new slogan, consumers are expecting to see advertising and marketing materials utilizing the "Chase What Matters." Consumers may lose confidence in Chase if the company is forced to reverse course after such a highly-promoted launch. Indeed, consumers may come to believe that this reflects financial difficulties or management upheaval at Chase. Consumers are also accustomed to seeing Chase advertise and market its brand in local and national media, and the absence of such advertising during the first three months of 2008 may confuse and concern Chase customers, not to mention damage Chase's efforts to win new customers. Thus, Chase will be severely damaged even if the campaign is attempted to be restarted later.

23. To my understanding, plaintiff Northern Trust Corporation provides financial services to affluent individuals and families. This is dramatically different from the mass market consumer retail banking services offered by Chase name and mark. To my knowledge, Northern Trust is not considered a direct competitor to Chase for retail banking services.

24. The "Chase What Matters" slogan is not being used for JPMorgan Chase's private bank and asset management businesses, the businesses that most closely compete with Northern Trust Corporation. These services are advertised using the JPMORGAN mark.

//

//

CHIC_1752029.2

25. Although I keep track of financial services advertising generally, I do not recall ever having seen a Northern Trust advertisement using the slogans "FREEDOM TO FOCUS ON WHAT REALLY MATTERS," or "WHAT REALLY MATTERS" on the air or in any publication. Research conducted under my supervision as a result of this lawsuit failed to disclose any use of these slogans by Northern Trust on print advertisements. Such research discloses that the little television media that has been used by Northern Trust during the past two years cost only approximately $1.9 million (obtained from TNS-Media Intelligence advertising media tracking service) and only some of those advertisements included either of the slogans.

26. Attached as Exhibit 12 are true copies of examples of recent Northern Trust television advertising which I caused to be obtained in connection with this lawsuit.

27. Since at least as early as June 2006, Chase has been using the mark MONEY MATTERS for financial educational services. Attached as Exhibit 13 are representative specimens of Chase's use of MONEY MATTERS.

28. Since at least as early as 2004, Chase has been using the mark PHILANTHROPY MATTERS for community and charitable services. Attached as Exhibit 14 are representative specimens of Chase's use of PHILANTHROPY MATTERS.

29. Because of the visual and audio differences between Chase's "CHASE WHAT MATTERS" slogan and each of Northern Trust's slogans "FREEDOM TO FOCUS ON WHAT REALLY MATTERS" and "WHAT REALLY MATTERS," as well as their clearly different meanings, I do not believe there is any risk Northern Trust's wealthy customer base is likely to believe that Northern Trust and Chase are connected. Further, such customers are very knowledgeable about financial service business and undoubtedly know Chase and Northern

9

\*\* TOTAL PAGE.02 \*\*

Trust are not connected. If Chase had acquired Northern Trust it would have been a major financial story and there would be the first people who would have taken note of it. Moreover, anyone seeing the parties' respective advertising would realize the two are wholly unrelated.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 22nd day of January, 2008.

                                                      David A. Clifton

CHIC_1752029.2

JAN 23 2008 10:07 FR BANK 1 OH MARKETING    6142487957 TO 913127832547200    P.02/02