UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NORTHERN TRUST CORPORATION, a Delaware Corporation, <br><br>　　　　Plaintiff, <br><br>vs. <br><br>JPMORGAN CHASE & CO., a Delaware corporation <br><br>　　　　Defendant. | Case No. 08-C-297 <br><br> Hon. William T. Hart, U.S.D.J. <br><br> Hon. Arlander Keys, U.S.M.J. |

## JPMORGAN CHASE & CO.'S ANSWER TO NORTHERN TRUST'S COMPLAINT

Defendant JPMorgan Chase & Co. ("Chase") hereby answers the Complaint of the plaintiff, Northern Trust Corporation ("Northern Trust") as follows:

### Parties

**1.** Northern Trust is a corporation organized and existing under the laws of the State of Delaware. Its headquarters and principal place of business is at 50 South LaSalle Street, Chicago, Illinois 60603.

**ANSWER**:   Chase lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and, therefore, denies the same.

**2.** Chase is a corporation organized and existing under the laws of the State of Delaware. Its corporate headquarters are at 270 Park Avenue, New York, New York 10017. Its United States consumer and commercial banking headquarters are at 355 E. Illinois Street, Chicago, Illinois 60611.

**ANSWER**:   Admitted, except that Chase denies that the headquarters of its consumer and commercial banking operations are at 355 E. Illinois Street, Chicago, Illinois 60611.

### Jurisdiction and Venue

**3.** This is an action for trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, for deceptive trade practices under the Illinois Uniform

Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.* and the Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.,* and for trademark infringement and unfair competition under common law.

**ANSWER**: Chase admits that this is alleged to be an action for trademark infringement and unfair competition under 15 U.S.C. § 1051, *et seq.,* for deceptive trade practices under 815 ILCS 510/1, *et seq.*, and 815 ILCS 501/1, *et seq.*, and for trademark infringement and unfair competition under the common law, but denies that it has infringed any rights of or has competed unfairly with Northern Trust, or that Northern Trust is entitled to any recovery from Chase for the acts of Chase alleged in Northern Trust's complaint.

4. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1338 (a) and (b). This Court has supplemental jurisdiction over the state and common law claims under 28 U.S.C. § 1367.

    **ANSWER**: Admitted.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b) and (c).

    **ANSWER**: Admitted.

### Northern Trust and Its WHAT REALLY MATTERS Mark

6. Northern Trust is an independent private bank. Northern Trust provides banking and related financial services for corporations, institutions, and affluent individuals and families, including investment management, asset and fund administration services and fiduciary and banking solutions. Since 1889, Northern Trust has distinguished itself by its commitment to exceptional service, stability, and a strong emphasis on client relationships. Based in Chicago, Northern Trust has a network of 85 offices in 18 states and a dozen international locations.

    **ANSWER**: Chase admits that Northern Trust has offices in Chicago and provides banking and financial services to corporations, institutions, and affluent individuals and families. Chase lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph and, therefore, denies the same.

7.  Northern Trust's legacy of personalized, high-quality, client-centric service has earned it the confidence of generations of clients. By developing a deep understanding of its clients' needs, and focusing on service quality, rather than quantity, Northern Trust delivers its solutions-based services in the most user-friendly and time-efficient manner possible. This dedication to client service allows Northern Trust to liberate its clients from their financial management worries, giving them the time and freedom to pursue their interests.

    **ANSWER**:  Chase lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and, therefore, denies the same.

8.  The geographical reach of Northern Trust's personal financial services business is unrivaled: no other private bank in the United States has as many offices exclusively focused on the affluent market. Northern Trust's 85 offices are located within a 45-minute drive of approximately half of the nation's millionaire households. Each office staffs an experienced team of asset management, fiduciary, and private banking professionals who reside in the same communities where their clients live and work. Northern Trust's close proximity to its clients is one of the characteristics that makes Northern Trust unique.

    **ANSWER**:  Chase lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and, therefore, denies the same.

9.  Northern Trust's efforts to serve the personal wealth market often are recognized by both clients and industry observers. In 2005, Northern Trust received the "Outstanding Private Bank — The Americas" award from *Private Banking International* magazine. In the same year, 22 percent of the *Forbes 400* most affluent Americans were Northern Trust clients.

    **ANSWER**:  Chase lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and, therefore, denies the same.

10. In May 2005, Northern Trust decided to develop the service mark WHAT REALLY MATTERS for a broad new advertising campaign.

    **ANSWER**:  Chase lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and, therefore, denies the same.

11. Northern Trust launched an advertising campaign featuring the WHAT REALLY MATTERS mark (the "WHAT REALLY MATTERS Campaign") in January 2006, with print and television advertisements. Copies of representative advertisements from the WHAT REALLY MATTERS Campaign are attached as **Exhibit 1.**

**ANSWER**:   Chase admits that copies of documents are attached as Exhibit 1 to the Complaint and that said documents speak for themselves as to their content  Chase lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph and, therefore, denies the same.

12.   In 2005, Northern Trust spent more than $8 million to develop the WHAT REALLY MATTERS Campaign.

**ANSWER**:   Chase lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and, therefore, denies the same.

13.   Northern Trust continued the WHAT REALLY MATTERS Campaign through 2006 and 2007, spending in excess of $9 million and $10 million, respectively. The WHAT REALLY MATTERS Campaign continues in a variety of media.

**ANSWER**:   Chase lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and, therefore, denies the same.

14.   The WHAT REALLY MATTERS Campaign enhanced Northern Trust's valuable reputation and goodwill among clients as a financial services provider that offers an exceptionally high level of customers [*sic*] service.  Northern Trust's clients and potential clients have come to associate the WHAT REALLY MATTERS mark with the outstanding financial services provided by Northern Trust.  These services are widely sought by discerning clients due to Northern Trust's excellent reputation.

**ANSWER**:   Chase denies that Northern Trust's clients and potential clients associate the phrase, "WHAT REALLY MATTERS" with the services provided by Northern Trust, but otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and, therefore, denies the same.

15.   Northern Trust owns the following valid federal trademark registration for WHAT REALLY MATTERS marks:

| WHAT REALLY MATTERS | Filed: July 19, 2005<br>Registered: December 25, 2007 | Services: banking services, personal and corporate trust services, funds investment, investment advice, and investment consultation services |
|---|---|---|
| THE FREEDOM TO FOCUS ON WHAT REALLY MATTERS | Filed: July 19, 2005<br>Registered: January 1, 2008 | Services: banking services, personal and corporate trust services, funds investment, investment advice, and investment consultation services |

Copies of these registrations are attached as **Exhibit 2**. When Northern Trust applied to register these marks, the Trademark Office found "no similar registered or pending mark which would bar registration under Trademark Act Section 2(d), 15 U.S.C. Section 1052(d)." Copies of the relevant office actions are attached as **Exhibit 3.**

**ANSWER**: Chase admits that Exhibit 2 to Northern Trust's Complaint purports to consist of copies of a Registration No. 3,360,523 (Application Serial No. 78/673,661) for the mark "WHAT REALLY MATTERS," which identifies a filing date of July 19, 2005 and a registration date of December 25, 2007, and Registration No. 3,363,286 (Application Serial No. 78/673,655), for the mark "THE FREEDOM TO FOCUS ON WHAT REALLY MATTERS," which identifies a filing date of July 19, 2005 and a registration date of January 1, 2008. Chase further admits that Exhibit 3 to Northern Trust's Complaint purports to be copies of office actions from the prosecution of application Serial Nos. 78/673,661 and 78/673,655 respectively. Chase admits that pages 2 and 6 of Exhibit 3 to Northern Trust's Complaint state that: "The examining attorney has searched the Office records and has found no similar registered or pending mark which would bar registration under Trademark Act Section 2(d), 15 U.S.C. Section 1052(d). TMEP section 1105.01." Chase denies that Northern Trust has valid trademark rights in the phrases "WHAT REALLY MATTERS" or "THE FREEDOM TO FOCUS ON WHAT

REALLY MATTERS." Chase lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph and, therefore, denies the same.

**16.** Prior to Chase's actions described below, no live federal trademark registration or application existed for marks containing the words "what" and "matters" in connection with banking services other than Northern Trust's marks. A copy of a search of the Trademark Office's web site performed on January 13, 2008, reveals exactly three entries for such marks. The first two are Northern Trust's registrations, and the third is Chase's application. Had Chase performed this simple search at any time since July 2005 and prior to adopting the CHASE WHAT MATTERS MARK, it would have immediately discovered Northern Trust and its WHAT REALLY MATTERS marks. A copy of the Trademark Office web site search of January 13, 2008, is attached as **Exhibit 4.**

**ANSWER**: Chase admits that Exhibit 4 to Northern Trust's Complaint purports to be a screenshot of a Trademark Office website search conducted on January 13, 2008 with the terms "what" and "matters" for "live" registrations in which the term "banking" is listed in the description of goods and services. Chase denies that such a search is "simple" and further denies that such a search accurately portrays the extent of third party use of registered or unregistered marks containing the words "what" and "matters" that are used in connection with banking services. Chase admits that a trademark search using methodology as limited and incomplete as that used by Northern Trust in the aforementioned search would have disclosed Northern Trust's aforementioned registrations and Chase's application. Chase denies that Northern Trust has valid trademark rights in the phrases "WHAT REALLY MATTERS" or "THE FREEDOM TO FOCUS ON WHAT REALLY MATTERS." Chase lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph and, therefore, denies the same.

### JPMorgan Chase & Co. and Its CHASE WHAT MATTERS Mark

**17.** Chase is a leading global financial services firm. It serves millions of consumers throughout all 50 states, operates in more than 50 countries, and has more than 170,000 employees. Chase is a component of the Dow Jones Industrial Average, has issued more than 154 million credit cards, and serves the public and small businesses through nearly

-6-

3,100 bank branches, 9,100 ATMs, and 280 mortgage offices. Chase also has loan-originating relationships with 15,000 auto dealerships.

**ANSWER**:   Admitted.

18.  The last fifteen years have seen a surge in merger and acquisition activity in the banking and financial services industry. Recent examples include Wachovia's acquisitions of SouthTrust, Golden West Financial, and World Savings Bank; as well as Bank of America's acquisitions of FleetBoston Financial Corp., MBNA Corporation, and LaSalle Bank. Chase has been an active participant in this trend. In 2004, Chase acquired Bank One Corporation, which had been the sixth-largest bank in the United States. In 2006, Chase acquired The Bank of New York's consumer, small-business, and middle-market banking businesses. Most recently, at the same time as its launch of its CHASE WHAT MATTERS advertising campaign, Chase completed an acquisition of part of the mortgage portfolio belonging to British lender **Northern Rock.**

**ANSWER**:   Chase admits that during the last fifteen years there has been merger and acquisition activity in the banking and financial services industry. Chase admits that examples include Wachovia's acquisitions of SouthTrust, Golden West Financial, and World Savings Bank; as well as Bank of America's acquisitions of FleetBoston Financial Corp., MBNA Corporation, and LaSalle Bank. Chase admits that: in 2004 it acquired Bank One Corporation, which had been the sixth-largest bank in the United States; in 2006 it acquired The Bank of New York's consumer, small-business, and middle-market banking business; and it recently has purchase a portfolio of equity release mortgages from United Kingdom based British mortgage lender Northern Rock. Chase further admits that it has launched its CHASE WHAT MATTERS advertising campaign. Chase lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph and, therefore, denies the same.

19.  Chase's 2006 Annual Report states that Chase "increased checking accounts 14% to 10 million" as well as "added 438 net new branches, including 339 acquired from The Bank of New York; and 1,194 ATMs, including 400 acquired from The Bank of New York and 500 placed in Walgreens stores." A copy of p. 15 from Chase's 2006 Annual Report, titled "Retail Financial Services," is attached as **Exhibit 5.**

**ANSWER**:  Chase admits that Exhibit 5 to Northern Trust's Complaint is an excerpted copy of the cover and page 15 of Chase's 2006 Annual Report.  Chase admits that this page states, among other things, that Chase: "increased checking accounts 14% to 10 million" and "added 438 new branches, including 339 acquired from The Bank of New York; and 1,194 ATMs, including 400 acquired from The Bank of New York and 500 placed in Walgreens stores throughout Florida, Colorado, and Louisiana."  Chase denies that the quoted portion in the above Paragraph accurately reflects the information communicated.

20. Chase's 2006 Annual Report also states that Chase was the "#1 commercial bank in market penetration in Chase's retail branch footprint, almost double that of the next leading competitor."  A copy of p. 17 from Chase's 2006 Annual Report, titled "Commercial Banking," is attached as **Exhibit 6.**

**ANSWER**:  Chase admits that Exhibit 6 to Northern Trust's Complaint is an excerpted copy of the cover and page 16 of Chase's 2006 Annual Report, and admits that Exhibit 6 states, among other things, that Chase's "2006 Highlights" include: "#1 commercial bank in market penetration in Chase's retail branch footprint, almost double that of the next leading competitor," which statements cites to an "SRBI Footprint Study 2005."  Chase denies that the quoted portion in the above Paragraph accurately reflects the information communicated.

21. On October 19, 2007, Chase filed a federal trademark application with the United States Patent and Trademark Office to register the mark CHASE WHAT MATTERS for banking and related financial services (App. Ser. No. 77/308,911).  The application was filed on an intent-to-use basis, well after Northern Trust applied to register its WHAT REALLY MATTERS mark.

**ANSWER**:  Chase admits that, subsequent to when Northern Trust applied to register WHAT REALLY MATTERS, Chase filed an application (Serial number 77/308,911) on October 19, 2007 on an intent-to-use basis seeking a federal trademark registration with the United States

Patent and Trademark Office for the mark CHASE WHAT MATTERS for banking and related financial services. Chase denies the remaining allegations in this Paragraph.

**22.**    In an office action dated December 28, 2007, the Trademark Office refused registration of the CHASE WHAT MATTERS mark based on a likelihood of confusion with Northern Trust's registration of WHAT REALLY MATTERS. The Trademark Office found that Northern Trust's and Chase's marks and services were similar, stating that:

> [Chase]'s mark, CHASE WHAT MATTERS, is similar to the registered mark, WHAT REALLY MATTERS. The marks both contain the words 'WHAT' and 'MATTERS,' which have the same sound, spelling, and meaning in the marks.
>
> * * *
>
> [Chase]'s services, namely 'Banking and related financial services,' are similar to registrants' services, namely 'banking services, personal and corporate trust services, funds investment, investment advice, and investment consultation services.'
>
> * * *
>
> **Accordingly, registration is refused under § 2(d) of the Trademark Act based upon a likelihood of confusion.**

(Emphasis added, citations omitted.) A copy of the office action is attached as **Exhibit 7**.

**ANSWER**:    Chase admits that the Trademark Office issued a first office action dated December 28, 2007 (the "First Office Action") in the prosecution of Application Serial Number 77/308,911 for the mark CHASE WHAT MATTERS. Chase admits that Exhibit 7 to Northern Trust's Complaint is a copy of the First Office Action. Chase admits that the following registrations and prior pending applications were cited against it in the First Office Action: Registration No. 2,989,714 for DELIVERING WHAT MATTERS MOST; Registration No. 3,360,523 for WHAT REALLY MATTERS; Application Serial No. 78/871,466 for WHAT WE DO MATTERS; and Application Serial No. 78/673,655 for THE FREEDOM TO FOCUS ON WHAT REALLY MATTERS. Chase admits that the First Office Action states that:

> Applicant's mark, CHASE WHAT MATTERS, is similar to the registered mark, WHAT REALLY MATTERS. The marks both contain the words "WHAT" and "MATTERS," which have the same sound, spelling, and meaning in the marks.

> Applicant's mark, CHASE WHAT MATTERS, is also similar to the registered mark, DELIVERING WHAT MATTERS MOST. The marks both contain the wording "WHAT MATTER," which has the same sound, spelling, and meaning in the marks.
>
> * * *
>
> Applicant's services, namely "Banking and related financial services," are similar to registrants' services, namely "banking services, personal and corporate trust services, funds investment, investment advice, and investment consultation services;" and "Financial services, namely, student loans."
>
> * * *
>
> Accordingly, registration is refused under §2(d) of the Trademark Act based upon a likelihood of confusion. ***Although the trademark examining attorney has refused registration, applicant may respond to the refusal by submitting evidence and arguments in support of registration.***

(emphasis added). Chase denies the remaining allegations in this Paragraph.

**23.** Despite the Trademark Office's refusal to register Chase's mark due to a likelihood of confusion with Northern Trust's mark, on January 9, 2008, Chase announced that it planned to debut the CHASE WHAT MATTERS mark as the centerpiece of a national rebranding campaign designed for highest visibility among the entire U.S. public. A copy of the New York Times article announcing Chase's CHASE WHAT MATTERS campaign is attached as **Exhibit 8.**

**ANSWER**: Chase denies that the Trademark office has refused to register Chase's CHASE WHAT MATTERS mark due to a likelihood of confusion. Chase admits that Exhibit 8 to Northern Trust's complaint is a copy of an article, written by a third party and found at the New York Times' website at www.nytimes.com, dated January 9, 2008, regarding Chase's CHASE WHAT MATTERS advertising campaign. Chase admits that Exhibit 8 states in part that: "'Chase What Matters,' the tagline and theme of the campaign, will be introduced on Sunday with a series of print ads in major newspapers, followed by four television commercials that will be broadcast in rotation on Monday morning's network news programs." Chase further admits that Exhibit 8 refers to Chase's subject advertising campaign as a "rebranding effort." Chase denies that it announced that "it planned to debut the CHASE WHAT MATTERS mark as

-10-

the centerpiece of a national rebranding campaign designed for the highest visibility among the entire U.S. public."

24. The New York Times article also states that the CHASE WHAT MATTERS campaign is "the first overhaul of Chase's brand advertising since its 2004 merger with Bank One. The ads . . . will be used throughout the bank's wide range of consumer businesses, including credit cards, student loans and retail banking."

**ANSWER**: Chase admits that Exhibit 8 to Northern Trust's complaint states that the aforesaid advertising campaign is "the first overhaul of Chase's brand advertising since its 2004 merger with Bank One. The ads . . . will be used throughout the bank's wide range of consumer businesses, including credit cards, student loans and retail banking."

25. Chase announced that the first new CHASE WHAT MATTERS advertisements will air on Monday, January 14, 2008, during the "Today Show" on NBC and on "Good Morning America" on ABC, both starting at 7:00 a.m. EST. Advertisements will appear on ABC, CBS, and NBC nationally, as well as on various cable networks, including the Food Network, HGTV, and The History Channel. Prominent television programming during which CHASE WHAT MATTERS advertisements will be shown include the Super Bowl pre-game show, Oprah Winfrey's pre-Academy Awards interview special, and prime-time programming such as the highly-rated shows "Grey's Anatomy," "American Idol," "Prison Break," and "Boston Legal." A copy of a Business Wire press release issued on January 9, 2008, discussing the CHASE WHAT MATTERS marketing campaign is attached as **Exhibit 9.**

**ANSWER**: Chase admits that Exhibit 9 to Northern Trust's Complaint is a copy of a Business Wire press release issued on January 9, 2008 regarding Chase's aforesaid advertising campaign. Chase admits that Chase announced that: "The first new Chase television ads will air Monday, Jan. 14 during the 'Today Show' on NBC and on 'Good Morning America' on ABC, both starting at 7 a.m. EST. Ads will appear on ABC, CBS, and NBC nationally, as well as on various cable networks, including the Food Network, HGTV, and The History Channel." Chase admits that Chase stated that "[p]rominent TV vehicles" include: "Super Bowl pre-game, Oprah

-11-

Winfrey's pre-Academy Awards interview special and prime-time programming, including 'Grey's Anatomy,' 'American Idol,' 'Prison Break,' and 'Boston Legal.'"

26. The Business Wire press release also states that online CHASE WHAT MATTERS advertising also will begin on January 14, 2008, on high-impact web sites such as <yahoo.com> and <msn.com>. Print advertisements in newspapers and magazines, including the March issue of *O*, Oprah Winfrey's magazine, will begin running on Sunday, January 13, 2008. A copy of the print advertising that appeared in the January 13, 2008, New York Times is attached as **Exhibit 10**. Chase also plans to make extensive use of outdoor and out-of-home advertising media, including subways, public transit stations, billboards, and movie theater trailers.

    **ANSWER**: Chase admits that Exhibit 9 to Northern Trust's Complaint is a copy of a Business Wire press release dated January 9, 2008 regarding Chase's aforesaid advertising campaign, stating that: "online ads will be seen beginning Jan. 14 on high-impact sites such as Yahoo.com and MSN.com." Chase admits that it stated that it would place the aforesaid advertising in "[n]ewspapers and magazines, including the March issue of O, The Oprah Magazine, and extensive outdoor and out-of-home, including subway, transit stations, taxis, billboards and trailers at movie theaters." Chase admits that Exhibit 10 to Northern Trust's Complaint depicts a copy of an advertisement that appeared in the January 13, 2008 Final National Edition of the New York Times.

27. According to Business Wire, Chase executives say that they will spend more than $70 million on the CHASE WHAT MATTERS advertising campaign in the first quarter of 2008 alone. The overwhelming size of this campaign will swamp the market, smothering Northern Trust's WHAT REALLY MATTERS Campaign. In the next two-and-one-half months, Chase plans to spend over twice times as much on promoting its CHASE WHAT MATTERS mark as Northern Trust has spent on its WHAT REALLY MATTERS Campaign since its inception two years ago.

    **ANSWER**: Chase admits that Exhibit 9 to Northern Trust's Complaint purports to be a copy of a Business Wire press release dated January 9, 2008 regarding the aforesaid advertising campaign, stating that: "The advertising launch – more than $70 million in the first quarter alone,

including Internet, national and local media – uses iconic music and black-and-white images accented by Chase blue." Chase denies that the aforesaid advertising campaign will swamp the market, smothering Northern Trust's WHAT REALLY MATTERS Campaign. Chase lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph and, therefore, denies the same.

### Northern Trust Shares Its Concerns with Chase

28. After learning of Chase's planned advertising campaign from media reports on January 9, 2008, Northern Trust promptly contacted Chase to share its concern that the CHASE WHAT MATTERS mark will cause substantial consumer confusion due to its similarity with Northern Trust's WHAT REALLY MATTERS mark.

    **ANSWER**: Chase admits that Northern Trust contacted Chase regarding Northern Trust's regarding CHASE WHAT MATTERS, but denies that its use by Chase may cause consumer confusion, or that it is substantially similar to WHAT REALLY MATTERS. Chase lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph and, therefore, denies the same.

29. Representatives of both parties met on January 11, 2008, at Chase's request, but did not reach a resolution. Chase chose to proceed with its launch of an advertising campaign that features an infringing mark.

    **ANSWER**: Chase admits that on January 11, 2008, representatives of Chase and representatives of Northern Trust met at Chase's request, and that Chase sought a resolution of this dispute but none was reached, and that Chase subsequently launched its aforesaid advertising campaign. Chase denies the remaining allegations in this Paragraph.

30. Chase, the junior user, is aware of Northern Trust's WHAT REALLY MATTERS mark and Campaign. Chase plans to use its superior economic power to saturate the financial services market with its confusingly similar CHASE WHAT MATTERS mark, overwhelming the marketplace power and value of the WHAT REALLY MATTERS mark used by Northern Trust, the senior user. Upon information and belief, Chase knows or recklessly disregards that its use of the CHASE WHAT MATTERS mark will harm Northern Trust's reputation and business.

**ANSWER**: Denied, except that Chase has become aware of use of WHAT REALLY MATTERS by Northern Trust, including in television commercials.

**31.** Chase committed these acts without Northern Trust's permission or consent.

**ANSWER**: Chase denies that it needed to obtain Northern Trust's permission or consent, and denies the remaining allegations in this Paragraph.

## Count I
## Trademark Infringement

**32.** Northern Trust incorporates by reference, as if fully set forth herein, the allegations in paragraphs 1 through 31 of its Complaint.

**ANSWER**: Chase repeats and incorporates its responses to the allegations contained in Paragraphs 1-31 as if fully set forth herein.

**33.** Chase's use of the CHASE WHAT MATTERS mark as alleged herein is likely to cause confusion as to the source, origin, affiliation, authorization, or sponsorship of Northern Trust's services. Among other harms, Chase's use of the CHASE WHAT MATTERS mark is likely to cause the consuming public of the United States, including clients or potential clients of Northern Trust, to mistakenly believe that Northern Trust's or its services are legitimately connected or associated with, or sponsored or authorized by, Chase, or that Northern Trust has merged, or is about to merge, with Chase.

**ANSWER**: Denied.

**34.** Chase's aforesaid use of the CHASE WHAT MATTERS mark violates Northern Trust's exclusive rights in its WHAT REALLY MATTERS mark and constitutes trademark infringement by reverse confusion in violation of the Trademark Laws of the United States, 15 U.S.C. § 1114, and the common laws of various states, including Illinois.

**ANSWER**: Denied.

**35.** On information and belief, Chase's infringing use of the CHASE WHAT MATTERS mark after the Trademark Office refused registration based on Northern Trust's WHAT REALLY MATTERS registration, and after Northern Trust shared its concern that the CHASE WHAT MATTERS mark infringes the WHAT REALLY MATTERS mark, is and continues to be deliberate, willful, and wanton, making this an exceptional case within the meaning of 15 U.S.C. § 1117.

**ANSWER**: Denied.

**36.**   Chase's aforesaid use of the CHASE WHAT MATTERS mark is greatly and irreparably damaging to Northern Trust and will continue to greatly and irreparably damage Northern Trust unless enjoined by this Court.  An award of monetary damages alone cannot fully compensate Northern Trust for its injuries and Northern Trust lacks an adequate remedy at law.

**ANSWER**:   Denied.

## Count II
## Unfair Competition

**37.**   Northern Trust incorporates by reference, as if fully set forth herein, the allegations in paragraphs 1 through 36 of its Complaint.

**ANSWER**:   Chase repeats and incorporates its responses to the allegations contained in Paragraphs 1-36 as if fully set forth herein.

**38.**   Chase's use of the CHASE WHAT MATTERS mark as alleged herein constitutes unfair competition, false representation, and false designation of origin upon and in connection with Chase's services, and thus violates 15 U.S.C. § 1125(a) and the common law of various states, including Illinois.

**ANSWER**:   Denied.

**39.**   Chase's use of the CHASE WHAT MATTERS mark suggests association or affiliation with Northern Trust, so as to cause, or be likely to cause, confusion or mistake, or to deceive consumers as to the relationship between Chase and its services and Northern Trust and its services.  Among other harms, consumers are likely to believe, incorrectly, that Chase and Northern Trust are somehow connected or affiliated or that Chase has added Northern Trust to its stable of mergers.

**ANSWER**:   Denied.

**40.**   As a result of the aforesaid acts by Chase, Northern Trust has been severely injured in its business and property.  The injury to Northern Trust is and continues to be immediate and irreparable.  An award of monetary damages alone cannot fully compensate Northern Trust for its injuries and Northern Trust lacks an adequate remedy at law.

**ANSWER**:   Denied.

## Count III
### Deceptive Trade Practices and Consumer Fraud and Deceptive Business Practices In Violation of Illinois Law

**41.** Northern Trust incorporates by reference, as if fully set forth herein, the allegations in paragraphs 1 through 40 of its Complaint.

**ANSWER**: Chase repeats and incorporates its responses to the allegations contained in Paragraphs 1-40 as if fully set forth herein.

**42.** Chase's use of the CHASE WHAT MATTERS mark as alleged herein causes confusion or misunderstanding on the part of consumers as to the approval, affiliation, connection, or association of Chase's services with Northern Trust's services, or causes consumers to think that Chase has added Northern Trust to its stable of mergers.

**ANSWER**: Denied.

**43.** As a result of the aforesaid acts, Chase has been and is engaging in deceptive trade practices within the meaning of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 501/1 *et seq.* and the Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*

**ANSWER**: Denied.

**44.** As a result of the aforesaid acts by Chase, Northern Trust has been severely injured in its business and property. The injury to Northern Trust is and continues to be immediate and irreparable. An award of monetary damages alone cannot fully compensate Northern Trust for its injuries, and Northern Trust lacks an adequate remedy at law.

**ANSWER**: Denied.

### PRAYER FOR RELIEF

**WHEREFORE**, Chase prays for entry of judgment:

 A. That Northern Trust's Complaint be dismissed, and that Northern Trust take nothing thereby;

 B. That Chase be awarded its costs incurred herein;

C. That this case be declared exceptional, and that Chase be awarded its attorneys' fees pursuant to 15 U.S.C. § 1117; and

D. Any such other and further relief as the Court determines to be reasonable and just.

Dated: February 4, 2008                                              Respectfully submitted,


By:   s/   Jennifer L. Gregor
Craig S. Fochler (IL Bar No. 0840858)
cfochler@foley.com
Charles R. Mandly, Jr. (IL Bar No. 6185827)
cmandly@foley.com
Jennifer L. Gregor (IL Bar No. 6286281)
jgregor@foley.com
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, IL 60610-4764
312/832.4500
312/832.4700 – Fax

Ira J. Levy (*pro hac vice*)
ilevy@goodwinprocter.com
GOODWIN PROCTER LLP
599 Lexington Avenue
New York, New York, 10022
212/813-8800
212/355-3333 – Fax

*Attorneys for Defendant*
*JPMorgan Chase & Co.*

-18-

**CERTIFICATE OF SERVICE**

I, Jennifer L. Gregor, an attorney, hereby certify that on February 4, 2008, I electronically filed JPMORGAN CHASE & CO.'S ANSWER TO NORTHERN TRUST'S COMPLAINT with the Clerk of the Court using the CM/ECF system, which will send an electronic copy of the foregoing to David Craig Hilliard (dhilliard@pattishall.com), Hans Ulrich Widmaier (uw@pattishall.com), Teresa Dillon Tambolas (ttambolas@pattishall.com), and Ashly Ann Iaculo (ai@pattishall.com).

s/ Jennifer L. Gregor<br>Jennifer L. Gregor

CHIC_1769746